# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3538

_____

United States of America,           *
                                    *

       Plaintiff - Appellee,    *
                                    *   Appeal from the United States

     v.                     *   District Court for the
                                    *   District of Nebraska.

Ralph Cordy,                *
                                    *

       Defendant - Appellant.   *

_____

Submitted: September 26, 2008
Filed: March 25, 2009

_____

Before MURPHY, BOWMAN, and BENTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Ralph Cordy was charged with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), convicted by a jury, and sentenced to 108 months in prison. Cordy appeals his conviction, claiming that he was denied both his Sixth Amendment right to the counsel of his choice and the effective assistance of counsel. Cordy also appeals a sentencing enhancement imposed by the district court.[1] We affirm.

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

## I.

The National Center for Missing and Exploited Children reported the existence of two child pornography websites to Immigration and Customs Enforcement (ICE) in 2004. After the ICE Cyber Crimes Center analyzed the websites' subscriber lists, Ralph Cordy was identified as a potential consumer of child pornography.

In the spring of 2006, agents from ICE and the United States Postal Inspection Service (USPIS), along with a deputy from the Douglas County, Nebraska Sheriff's Office instigated a "knock and talk" at Cordy's home in order to "freshen" some stale information. The agents informed Cordy that they were investigating credit card violations. In response to questions about his email address and suspicious credit card charges, Cordy asked whether the inquiry was leading toward child pornography. Informed that it was, Cordy maintained that he actively searched for child pornography so that he could report it to a watchdog website. Cordy could not name the website, however. He indicated that he occasionally received unsolicited emails with subject lines referencing "Russian Lolitas" or "child pornography" but that he deleted them immediately.

Cordy denied the agents' request to search his residence. While agents from ICE and the USPIS secured the premises, the deputy sheriff obtained a search warrant. After serving Cordy with the warrant at his residence, the agents and deputy seized five computer towers, two laptop computers, and two external hard drives. Subsequently agents performed a forensic analysis of the seized hardware and identified in excess of 6000 images and 100 videos containing child pornography. Cordy was indicted for violating 18 U.S.C. § 2252(a)(4)(B), which prohibits the knowing possession of child pornography. Cordy retained a private attorney, Steven J. Lefler, to prepare his defense.

Cordy pled not guilty on October 18, 2006. That same day the district court issued its case management order and established the following deadlines: October 25, 2006 for discovery, November 7 for pretrial motions, and trial on December 11. On the day pretrial motions were due, Lefler moved to extend the deadline by two weeks, primarily because he had not yet received the search warrant and affidavit through discovery. Lefler's motion was granted, and the pretrial motion deadline was extended until November 22, 2006.

On November 21, 2006, Lefler filed a motion to suppress evidence seized as a result of the search and Cordy's statements made prior to the search. The court held a suppression hearing in December, and the motions were subsequently denied. No objections were filed to the magistrate judge's Report and Recommendation, and it was adopted on March 5, 2007 by the district court which then rescheduled trial for March 27.

Lefler moved to continue the trial for an indeterminate period of time on March 7, 2007 because of a conflicting state court trial which had been previously scheduled. Counsel also informed the court that he planned to take a "sabbatical" on June 1, 2007. The government did not object to counsel's request for a continuance, and the magistrate judge granted the motion and rescheduled trial for April 24, 2007.

The parties filed a joint motion to continue trial on March 16, 2007. The district court conducted a hearing on April 17, 2007 to consider the joint motion. The government indicated that its forensic analysis was being hindered by its dependence on a busy secret service agent and a delay in receiving the necessary specialized software. It would thus be unable to complete its analysis until the first or second week of June. Defense counsel indicated that he would likely require two weeks to respond to and analyze the results of the government's forensic analysis and determine whether or not he needed to secure an expert. He also explained that his schedule presented a number of conflicts because he would be in Italy from May 18 until June

11, on jury duty in Arizona from June 22 through July 23, and in New York from September 1 through November 15, 2007. After considering the time required for forensic analysis, the court expressed concern about defense counsel's scheduling conflicts in this case and others. Lefler indicated that he had stopped taking new cases in November of 2006, and the district court warned that it would not permit further extensions. At the conclusion of the hearing, the court rescheduled trial for July 2, 2007.

Lefler filed an array of pretrial motions on May 18, 2007, some five months after the discovery deadline. He indicated that he had "uncovered new approaches and theories concerning the government's prosecution," as well as a line of helpful cases including Ashcroft v. Free Speech Coal., 535 U.S. 234 (2002). The motion sought to extend the motion deadline, to obtain independent analysis of the evidence seized from Cordy's residence, to declare 18 U.S.C. § 2252(a)(4)(B) unconstitutional, and to suppress compact discs seized from Cordy's residence depicting sexual contact between adults and children. He also requested the government's designation of its experts and a Daubert hearing.

Counsel's motion for independent analysis of seized physical evidence has particular relevance because of the Adam Walsh Child Protection and Safety Act, 18 U.S.C. § 3509(m) (2006). The Act provides in relevant part:

> (1) [A]ny property or material that constitutes child pornography . . . shall remain in the care, custody, and control of either the Government or the court.
> (2)(A) Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography . . . so long as the

-4-

Government makes the property or material reasonably available to the defendant.

(B) [P]roperty or material shall be deemed to be reasonably available to the defendant if the Government provides ample opportunity for inspection, viewing, and examination at a Government facility . . . .

Thus, under ordinary circumstances the defense would be limited to examining the contraband data in a government facility. In this case the data was stored in Omaha, Nebraska where Cordy was indicted.

Defense counsel and Cordy's expert concluded that the child pornography could have been placed onto his computer without his knowledge by means of a network intrusion or by a previous user. This would negate liability under the charging statute, and Lefler sought a forensic analysis of the seized data. Both the defense and the government indicated at trial that a thorough analysis of the data for this purpose would take approximately 35 days. Under the Adam Walsh Act the defense had access to the data at the government facility in Omaha, but the defense expert was located in Virginia and claimed that Cordy would be "bankrupted" if the analysis had to be done in Omaha. As a result Lefler sought an order compelling the duplication of the contraband, relying on United States v. Knellinger, 471 F. Supp. 2d 640, 650 (E.D. Va. 2007) (ordering government to provide defense with copy of contraband data for analysis because alternatives were prohibitively expensive).[2] The government later provided a copy of the data to Cordy's defense for review at a government facility in Virginia as an accommodation.

The court denied most of the defense motions on May 22, 2007, saving the motion in limine for later consideration. In addition to being untimely, the court

_____

[2]It is unclear why counsel did not simply seek an order compelling the government to provide access to the data at a government facility in Virginia. See United States v. Johnson, 456 F. Supp. 2d 1016, 1020 & n.3 (N.D. Iowa 2006).

found the motions for independent analysis of evidence, Daubert certification, and expert designation to be procedurally deficient. With respect to the motion to extend the pretrial motion deadline, the court noted that it had already expired in November. The court further explained:

> Although defense counsel represents that he has uncovered "new" theories of defense, nothing in the motions filed with the Court indicates that he could not have uncovered these theories of defense prior to the expiration of the pretrial motion deadline. As defense counsel candidly stated, he has "no good reason for not having discovered" the newly found theories earlier.

On June 18, 2006, the government filed an unopposed motion to continue trial for three weeks due to the unavailability of an essential witness. The magistrate judge granted the government's request and rescheduled trial for July 24, 2007. On July 10, 2007, Lefler moved to withdraw as Cordy's attorney. A hearing on the motion was set for July 16.

At the July 16 hearing Lefler moved to continue the trial for an unspecified period of time because Cordy had fired him. Lefler indicated that Cordy had retained James Martin Davis as new counsel and that Davis would be unavailable on July 24, the scheduled trial date, because he was recovering from an angioplasty and was unable to prepare for trial on such short notice. Although Davis appeared at the hearing, he stated that he had not yet been hired by Cordy. Lefler also reported that Cordy had spent the previous month attempting to find a different attorney, only to lose her services at "the eleventh hour." Finally, Lefler noted that he had been tardy in discovering that it was his responsibility to procure hard drives so that the government could provide a duplicate of the contraband data for review by the defense in Virginia.

In considering the motion for continuing trial the court pointed out that it was being argued only a week before trial, that many continuances had already been granted in the case, and that only now was Cordy asking for a delay so that he could retain new counsel:

> Court: [N]ow we are a week away from the trial and Mr. Cordy is asking for new counsel. And, of course, one concern that I have is a defendant has the right to the lawyer of his choice, especially when he's paying for that lawyer. But a defendant does not have a right to a continuance of the case. And certainly a defendant does not have a right to switch lawyers at the last minute in order to obtain a continuance of the case. So, Mr. Cordy, what is it, now a week before the trial of this case, that causes you to be so dissatisfied with Mr. Lefler's services that you believe that he can't represent you?
>
> Cordy: The main issue is . . . he hasn't got the evidence that my expert has requested fast enough to where we could build a defense . . . .
>
> Court: Well now, you were here when [the government] was explaining what the delay was and that delay really wasn't of any fault of Mr. Lefler's.
>
> Cordy: [W]ell, there was an incident where my expert asked for some information back in [April] and we never got that information from the prosecutor . . . . And it just doesn't seem like we have any time to build any kind of a defense. Plus, the matter of some of these motions that he filed and that were denied, I just started losing confidence in him.
>
> Court: It sounds to me like your frustration is more with the government and the court than with Mr. Lefler. I haven't heard you say one thing that Mr. Lefler has done wrong.

Later in the hearing, Lefler explained that Cordy's frustration with him stemmed primarily from the fact that he had been unable to provide the defense expert with timely access to the data. He also stated that his client's dissatisfaction had been

developing for a "while" and was based in part on his late discovery of a line of relevant cases.

The court denied the motion for a continuance, explaining:

[F]rankly I have not heard anything that persuades me that Mr. Lefler cannot do a very fine job representing the defendant in this case. Mr. Lefler is a very experienced criminal trial lawyer. He is fully capable of trying this case. And what I'm hearing is simply that the defendant has some frustration with the progress of the case, and perhaps with the court's rulings or the way that discovery has proceeded and the response of the government. But that's not Mr. Lefler's fault. I don't see that Mr. Lefler has in any way failed to provide professional representation for his client in this case.

On July 24 just prior to the commencement of trial, Cordy was rearraigned and informed that he faced a maximum sentence of ten rather than five years. Lefler argued that Cordy "would have evaluated differently some of the plea negotiations" had he been aware of the length of sentence he faced. It is not clear from the record when Cordy first learned of this mistake. We note, however, that the prosecution asserted at rearraignment that the parties had discussed a plea agreement of 63 months at some previous point in time.

At trial the government called Brent Morral, the ICE case agent responsible for the Cordy investigation, who testified that shortly after he began questioning Cordy about credit card transactions the defendant asked whether the investigation was leading toward child pornography. William Hugelman, a Secret Service agent and computer forensic investigator, also testified to finding approximately 6,000 images and 100 videos containing child pornography on Cordy's hard drives. A portion of these images and videos was entered into evidence at trial. Hugelman testified that he had checked the hard drives for viruses and malicious software, but had not found evidence of either. Hugelman also stated that, considering the sheer quantity of child

pornography he had found and the fact that it was organized in a clear fashion, he did not believe that network intrusion was responsible for the images on Cordy's computers. Finally, the government called a number of police officers who had previously been involved with child pornography investigations. These officers confirmed that the images entered into evidence depicted real, rather than virtual, children.

The defense called only two witnesses – Cordy's wife and his defense expert, Steven Moshlak. Moshlak testified that the government's data analysis was deficient and did not reliably indicate whether Cordy was responsible for or had knowledge of the contraband on his computer. Moshlak also stated that had he been able to spend approximately 35 days examining a duplicate of the raw data, he could have definitively determined whether Cordy had accessed child pornography on his computer. Moshlak explained that he could have accomplished this through searching for evidence of network intrusion, viruses, and spyware and through examining internet usage, email correspondence, and deleted data. Since the government had not provided him with a duplicate of the raw data but only a "working copy," he was unable to conduct such a search he said. Moreover, Moshlak only received a copy of the data approximately one week before trial because counsel had not timely filed a pretrial motion for it and was therefore unable to determine whether Cordy was responsible for or had knowledge of the pornography on his computer.

At the conclusion of trial, the jury found Cordy guilty of violating 18 U.S.C. § 2252(a)(4)(B). Prior to adjourning until the sentencing hearing, the court spoke directly to Cordy about his counsel: "[W]hether you plan to get different counsel or not . . . it's my observation that Mr. Lefler did an outstanding job providing you with representation throughout these proceedings."

## II.

We review the denial of a request for a continuance in order to substitute counsel for an abuse of discretion. United States v. Whitehead, 487 F.3d 1068, 1071 (8th Cir.), cert. denied, 128 S. Ct. 693 (2007).

The Sixth Amendment right to counsel of one's choice "commands, not that a trial be fair, but that a particular guarantee of fairness be provided – to wit, that the accused be defended by the counsel he believes to be best." United States v. Gonzalez-Lopez, 548 U.S. 140, 146 (2006). This right "derives from a defendant's right to determine the type of defense he wishes to present." United States v. Gonzalez-Lopez, 399 F.3d 924, 928 (8th Cir. 2005), aff'd, 548 U.S. 140 (2006). "Lawyers are not fungible, and often the most important decision a defendant makes in shaping his defense is his selection of an attorney." Id. (quoting United States v. Mendoza-Salgado, 964 F.2d 993, 1015-16 (10th Cir. 1992)). Individual attorneys may pursue very different litigation strategies with respect to plea bargaining, discovery, development of the theory of defense, and witness presentation. Gonzalez-Lopez, 548 U.S. at 150. Since the wisdom of a particular choice by defense counsel may very well affect the outcome of a case, "[a]s a general rule, defendants are free to employ counsel of their own choice." Gonzalez-Lopez, 399 F.3d at 928 (quoting United States v. Lewis, 759 F.2d 1316, 1326 (8th Cir. 1985)).

That right is not absolute, however. United States v. Vallery, 108 F.3d 155, 157 (8th Cir. 1997). It is instead "circumscribed in several important respects." Wheat v. United States, 486 U.S. 153, 159 (1988). A defendant's "right to choice of counsel must not obstruct orderly judicial procedure or deprive courts of their inherent power to control the administration of justice." Vallery, 108 F.3d at 157. This is because "[t]rial judges necessarily require a great deal of latitude in scheduling trials." Morris v. Slappy, 461 U.S. 1, 11 (1983). The efficient operation of our judicial system

depends upon gathering together a great number of citizens – lawyers, witnesses, jurors, and court personnel, for example – at a particular time and place. Id.

The grant of a continuance in order to substitute counsel has an impact on the court's calendar as well as all parties involved. For that reason, "trial courts are vested with broad discretion in matters of continuances" for the purpose of substituting counsel. United States v. Larson, 760 F.2d 852, 856 (8th Cir. 1985). In exercising its discretion, "the district court must carefully balance the defendant's right to be represented by the counsel of his choice against the court's interest in 'the orderly administration of justice.'" Gonzalez-Lopez, 399 F.3d at 929 (quoting Urquhart v. Lockhart, 726 F.2d 1316, 1319 (8th Cir. 1984)).

Among the factors for the trial court to balance in considering a motion for continuance are:

> (1) the nature of the case and whether the parties have been allowed adequate timing for trial preparation;
> (2) the diligence of the party requesting the continuance;
> (3) the conduct of the opposing party and whether a lack of cooperation has contributed to the need for a continuance;
> (4) the effect of the continuance and whether a delay will seriously disadvantage either party; and
> (5) the asserted need for the continuance, with weight to be given to sudden exigencies and unforeseen circumstances.

United States v. Issaghoolian, 42 F.3d 1175, 1177-78 (8th Cir. 1994) (citing United States v. Coronel-Quintana, 752 F.2d 1284, 1287 (8th Cir. 1985)).

Even though Cordy's case had complexities because of the nature of the evidence involved and the theory the defense sought to present, we conclude that the defense had adequate time for trial preparation. Counsel was retained in October of 2006 and trial commenced approximately ten months later in July of 2007. From the

record it appears that counsel had access to the computer data needed to prepare the defense from at least the beginning of May until trial commenced at the end of July.

Cordy was not diligent in requesting a continuance for the purposes of substituting counsel. Cordy stated at the July 16, 2007 hearing that his discomfort with counsel stemmed from his failure to provide the defense expert earlier access to the data and to file his motions at an earlier point. It appears from the record, however, that Cordy should have been aware of these alleged shortcomings by the end of May, yet he waited until July 16, 2007 to seek a continuance in order to substitute counsel. Furthermore, at the April 17, 2007 hearing, Cordy was put on notice that counsel was occupied with other matters that could potentially limit the time he had available for defense preparation.

Although Cordy was dissatisfied that his defense expert did not have access to the data until shortly before trial, the prosecution was not at fault. By virtue of the Adam Walsh Act, the data was required to remain in the custody of the government. Although counsel might have obtained earlier and more cost effective access by the defense expert through pretrial motions, Cordy has not established that the grant of a trial continuance would have provided him with a successful defense. Moreover, a continuance on the eve of trial can exact significant costs on the administration and case management of a federal court, members of the jury pool, witnesses, and other litigants affected by the postponement.

Finally, with due consideration for sudden exigencies and unforeseen circumstances, the asserted need for the continuance cautioned against the grant. Cordy sought a continuance in order to facilitate the substitution of counsel, but his dissatisfaction with counsel was neither sudden nor unforeseeable unlike the abrupt deterioration in counsel's health, for example, or the unexpected disappearance of a witness. It was also not clear when Davis would be ready to try the case were he to be retained.

We conclude that the denial of Cordy's motion for a continuance of trial in order to facilitate the substitution of counsel was not an abuse of discretion. Although Cordy may have been frustrated with Lefler's performance, "last minute requests to substitute counsel must not be allowed to become a tactic for delay." United States v. Swinney, 970 F.2d 494, 499 (8th Cir. 1992). Cordy's request to sever a ten month professional relationship two weeks before trial suggests that a desire for delay was the primary factor motivating the request. Although it would have been helpful if the district court had conducted a more thorough balancing test on the record, a trial court's "discretion is at its zenith . . ." when the defendant endeavors to replace counsel shortly before trial. Whitehead, 487 F.3d at 1071.

Cordy also raises an additional argument related to his counsel, claiming that he was denied his Sixth Amendment right to the effective assistance of counsel. Absent circumstances not presented by this case, a claim of ineffective assistance of counsel is not "cognizable on direct appeal . . . ." United States v. Ramon-Rodriguez, 492 F.3d 930, 941 (8th Cir.) (quotation marks omitted), cert. denied, 128 S. Ct. 938 (2007). Any such claim Cordy wishes to make must therefore be brought in a 28 U.S.C. § 2255 action. See United States v. Hernandez, 281 F.3d 746, 749 (8th Cir. 2002).

III.

Cordy finally contends that the district court erred in applying a five level sentencing guideline enhancement for possessing 600 or more images constituting child pornography under United States Sentencing Guidelines Manual § 2G2.2(b)(7)(D) (2006) because the underlying facts were not determined by a jury. We review the district court's construction and application of the sentencing guidelines de novo, and we review its factual findings regarding enhancements for clear error. United States v. Wintermute, 443 F.3d 993, 1004 (8th Cir. 2006).

Section 2G2.2(b)(7)(D) provides for a five level enhancement if the child pornography offense involves 600 or more "images." The guideline commentary defines images as "any visual depiction . . . that constitutes child pornography . . . ." § 2G2.2 cmt. n.4(A). Accordingly, to impose such a five level sentencing enhancement, the district court was required to find by a preponderance of the evidence that Cordy possessed 600 or more images constituting child pornography. Based on the record before us, we are satisfied that the district court made this finding. The sentencing court could not rely on the presentence report for findings because Cordy had objected to them. United States v. Poor Bear, 359 F.3d 1038, 1041 (8th Cir. 2004). At the sentencing hearing, however, Agent Morral testified that he had examined approximately 6000 images found on Cordy's hard drives and that in his "opinion, the majority of those [images] portrayed child pornography." A district court can "take account of factual matters not determined by a jury and . . . increase the sentence in consequence." Rita v. United States, 127 S. Ct. 2456, 2465-66 (2007). Even though the sentencing discussion sometimes lacked precision, we conclude there was sufficient evidence in the record to support the district court's ultimate finding and that it was not clearly erroneous.

IV.

Accordingly, we affirm Cordy's conviction and sentence.

_____

-14-