# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1077

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Rumeal Robinson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 22, 2011
Filed: December 5, 2011

_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Rumeal Robinson was convicted of conspiracy to commit bank fraud, bank bribery, making false statements to a financial institution, and wire fraud and was sentenced to seventy-eight months' imprisonment. Robinson appeals from his convictions and sentence, arguing that the district court[1] abused its discretion in denying a continuance to retain different counsel and interfered with Robinson's right to allocution by considering his statements in determining the sentence. We affirm.

_____

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

I.

Robinson was charged in a thirteen-count indictment for his role in a scheme to defraud a bank in Ankeny, Iowa. He pleaded not guilty. Although initially Robinson retained private counsel, his attorney moved to withdraw because Robinson could not afford representation. Thereafter, the district court appointed J. Keith Rigg to represent Robinson pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A. Before jury selection commenced on the first day of trial, Robinson requested permission to be represented by different counsel. Robinson, Rigg, and the district judge met in chambers for an in camera examination of Robinson's request.

Rigg explained that Robinson, who had played basketball in college and professionally, had spoken to alumni from the University of Michigan who had agreed to retain private counsel on Robinson's behalf. Rigg further explained that he and Robinson disagreed over trial strategy. In particular, Robinson wanted to call as a witness a certain unindicted coconspirator who Rigg believed should not be called. Rigg stated, "Based on that and some other disagreements that we've had, Mr. Robinson has informed me that he does not feel confident that I'm the right choice of counsel in this case, which is why he would like to seek other counsel at this time." Hr'g Tr. 3. Rigg then requested permission to withdraw from the case.

In response, Robinson reiterated his concern about Rigg's refusal to call certain witnesses. Robinson also said that he felt he would not "get my fair day in court" or "get a fair deal with him as an attorney." Hr'g Tr. 4.

The district court denied the request, finding it to be a delay tactic. The court noted that Robinson had been indicted more than one year earlier and that the trial had been continued after its date had been firmly set. "If this is a matter you wanted to pursue, it should have been pursued before the trial date. You just can't come in the day of trial and bring a matter like this up to the Court and expect to be accommodated." Hr'g Tr. 5.

Robinson's trial began that day, and he maintained his innocence throughout the proceedings. Following the six-day trial, the jury found him guilty on all counts. At sentencing, Robinson made a lengthy statement to the court, during which he maintained that he was convicted in violation of his constitutional rights. He claimed that the evidence was insufficient to convict him, that he was denied the effective assistance of counsel, and that he received an unfair trial. He claimed that he was merely an unsophisticated debtor and that he was not engaged in a conspiracy or a fraud and did not bribe a loan officer. Robinson compared the district judge to the loan officer and accused both of "manipulat[ing] and play[ing] upon the Defendant's ignorance—ignorance—of law." Sentencing Tr. 34

Robinson also claimed to be a good son who provided for his parents. At trial, Robinson's mother testified that Robinson had transferred the title of her home to secure loans and then spent the loan proceeds. The lender later foreclosed on the mortgage, and Robinson's mother was evicted from her home. At sentencing, Robinson claimed that his mother was not adequately appreciative of the mink coats, exotic trips, and vehicles he had purchased for her and their family.

After Robinson concluded, the district court said,

> Mr. Robinson, you have probably turned what was a very difficult task for me into a rather easy task because by your statement today, you demonstrate to me absolutely no remorse, absolutely no acknowledgment of fault. The record is replete with significant fraud that you committed involving numerous other people and defrauding an Iowa bank out of a substantial sum of money.

Sentencing Tr. 36. The district court later again mentioned Robinson's lack of remorse and emphasized the importance of the factor of deterrence in imposing sentences:

[T]he bottom line—and you're just demonstrating your total lack of understanding, your total lack of remorse for what you've done. You took over a million dollars and spent it mainly on your personal finances for you and those people that were around you. You said it was to develop a business, but what it turned out to be was a matter of satisfying your own greed. You have no remorse.

The major element I have to deal with in my 3553(a) factors is deterrence in a crime like this. People have to be deterred from the fraudulent activity that led to the loss to the bank which you caused, and therefore, I find there's no grounds for a variance outside the guideline sentence.

Sentencing Tr. 39-40. As stated earlier, the district court then sentenced Robinson to seventy-eight months' imprisonment, a sentence within the seventy- to eighty-seven-month range calculated under the United States Sentencing Guidelines Manual (U.S.S.G.).

II.

Robinson contends that he was denied his right to counsel of his choice, in violation of his Sixth Amendment right to counsel and his Fifth Amendment right to due process. As indicated above, Robinson requested new counsel on the first day of trial, and thus any substitution would have required that trial be continued to some later date. We review for abuse of discretion the denial of a continuance to substitute counsel. United States v. Cordy, 560 F.3d 808, 815 (8th Cir. 2009).

"While it is clear that an accused who is financially able to retain counsel of his own choosing must not be deprived of a reasonable opportunity to do so, it is also clear that the right to retain counsel of one's choice is not absolute." Urquhart v. Lockhart, 726 F.2d 1316, 1319 (8th Cir. 1984); see United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006) ("We have previously held that an element of [the right to counsel] is the right of a defendant who does not require appointed counsel to choose

-4-

who will represent him."); <u>Wheat v. United States</u>, 486 U.S. 153, 159 (1988) ("The Sixth Amendment right to choose one's own counsel is circumscribed in several important respects."). "The right to choice of counsel must not obstruct orderly judicial procedure or deprive courts of their inherent power to control the administration of justice." <u>United States v. Vallery</u>, 108 F.3d 155, 157 (8th Cir. 1997). "In exercising its discretion, the district court must carefully balance the defendant's right to be represented by the counsel of his choice against the court's interest in the orderly administration of justice." <u>Cordy</u>, 560 F.3d at 815 (internal quotation and citations omitted). We have set forth the following factors for the trial court to balance in ruling on a motion for a continuance:

(1) the nature of the case and whether the parties have been allowed adequate timing for trial preparation;
(2) the diligence of the party requesting the continuance;
(3) the conduct of the opposing party and whether a lack of cooperation has contributed to the need for a continuance;
(4) the effect of the continuance and whether a delay will seriously disadvantage either party; and
(5) the asserted need for the continuance, with weight to be given to sudden exigencies and unforeseen circumstances.

<u>Id.</u> at 815-16 (quoting <u>United States v. Issaghoolian</u>, 42 F.3d 1175, 1177-78 (8th Cir. 1994)).

We conclude that the district court did not abuse its discretion in denying a continuance to allow Robinson time to retain different counsel. The factors listed above weigh against the grant of a continuance: Robinson does not contend that he had inadequate time to prepare, that the government failed to cooperate, or that there was a sudden exigency or unforeseen circumstance. Robinson also was not diligent in requesting a continuance, having waited until the first day of trial to seek new counsel. Potential jurors had assembled for jury selection, and the parties and witnesses were prepared for trial. Moreover, Robinson did not provide the name of

the counsel he sought to have represent him, nor did substitute counsel contact the court or enter an appearance on Robinson's behalf. Robinson himself could not afford to retain a private attorney, and beyond his unspecific assertions that alumni agreed to pay for one, there was no assurance that another attorney was available to represent him. In light of these circumstances, the district court justifiably concluded that Robinson's primary motivation was his desire for delay. Robinson's asserted need for a continuance and a new attorney fails because he has not shown that the disagreements regarding certain tactical decisions rose to the level of a "justifiable dissatisfaction with appointed counsel." See United States v. Nguyen, 608 F.3d 368, 375 (8th Cir. 2010) (standard to prevail on motion to substitute counsel).

In light of the in camera hearing regarding his reasons for seeking new counsel, Robinson's contention that the district court considered only that a continuance would delay trial is also without merit. We note that "a trial court's discretion is at its zenith when the defendant endeavors to replace counsel shortly before trial." Cordy, 560 F.3d at 817 (internal quotation and citation omitted). We conclude that the district court adequately considered Robinson's right to be represented by the counsel of his choice against the court's interest in the orderly administration of justice and that the district court did not abuse its discretion in denying a continuance for Robinson to retain new counsel.

III.

Robinson next argues that the district court considered an improper factor—namely, his lack of contrition during allocution—in determining his sentence. Robinson concedes that he did not raise this issue before the district court, and thus we review for plain error. See United States v. Miller, 557 F.3d 910, 916 (8th Cir. 2009) (standard of review).

Robinson has failed to distinguish his case from our prior panel decision in United States v. Hildebrand, 152 F.3d 756, 766 (8th Cir. 1988), *abrogated on other grounds by* Whitfield v. United States, 543 U.S. 209 (2005). In Hildebrand, the district court departed upward based on the defendant's allocution, saying, "I actually was not going to do an upward departure until I heard your allocution, and if you had come into this court with some kernel of remorse for having ruined people's lives, I wouldn't have departed upward." 152 F.3d at 766 (quoting the district court's imposition of sentence). In affirming the sentence, we cited U.S.S.G. § 1B1.4 and noted that the sentencing court is entitled to "consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." Hildebrand, 152 F.3d at 766 (quoting U.S.S.G. § 1B1.4). We ultimately held that the defendant's right to allocution is not violated "if the district court considers defendant's attitude, demeanor, and outrageous protestation of innocence in exercising its sentencing discretion." Id. In light of Hildebrand, we cannot say that the district court plainly erred in considering the statements Robinson made at allocution.[2]

Conclusion

Robinson's convictions and sentence are affirmed.

_____

---

[2]To the extent that he raises the issue, we find to be without merit Robinson's challenge to the denial of an offense-level reduction for acceptance of responsibility and the imposition of an enhancement for obstructing justice. Robinson did not receive a reduction for acceptance of responsibility because he did not "clearly demonstrate acceptance of responsibility for his offense." U.S.S.G. § 3E1.1; see id. cmt. n.2 ("This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse."). Robinson received the enhancement for obstructing justice because of the perjury he committed during civil depositions. See U.S.S.G. § 3C1.1 cmt. n.4(B). Neither adjustment was punishment for Robinson's maintaining his innocence or failing to show remorse.