# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1153
_____

United States of America

*Plaintiff - Appellee*

v.

Mark Phillip Carter, II

*Defendant - Appellant*

------------------------------

Human Trafficking Institute

*Amicus on Behalf of Appellee(s)*

_____

No. 19-1172
_____

United States of America

*Plaintiff - Appellee*

v.

Breeanna Lynae Brown, also known as BB

*Defendant - Appellant*

------------------------------

Human Trafficking Institute

*Amicus on Behalf of Appellee(s)*

_____

No. 19-1177

_____

United States of America

*Plaintiff - Appellee*

v.

Sarina Ann Williams

*Defendant - Appellant*

------------------------------

Human Trafficking Institute

*Amicus on Behalf of Appellee(s)*

_____

No. 19-1344

_____

United States of America

*Plaintiff - Appellee*

v.

Ronzell Montez Williams, also known as LV

*Defendant - Appellant*

------------------------------

Human Trafficking Institute

*Amicus on Behalf of Appellee(s)*

_____

No. 19-1345

_____

United States of America

*Plaintiff - Appellee*

v.

Darren O. Coleman, also known as DC

*Defendant - Appellant*

------------------------------

Human Trafficking Institute

*Amicus on Behalf of Appellee(s)*

_____

Appeals from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: March 12, 2020
Filed: May 29, 2020

_____

Before ERICKSON, GRASZ, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

This case involves five defendants: Mark Philip Carter II, Darren O. Coleman, Sarina Ann Williams, Ronzell Montez Williams, and Breeanna Lynae Brown. All were members of a prostitution and sex trafficking conspiracy based in Iowa. Each pleaded guilty to at least one charged offense, and all appeal their sentences. We affirm.

I.

Carter was charged with several counts related to conspiracy to engage in sex trafficking and prostitution of five victims. He pleaded guilty to sex trafficking children. 18 U.S.C. § 1591(a)(1) & (b)(2). Coleman was charged with several counts relating to conspiracy to engage in sex trafficking and prostitution of two victims. He pleaded guilty to assisting an individual to engage in prostitution, 18 U.S.C. § 2422(a), and to coercing and enticing an individual to engage in prostitution, 18 U.S.C. § 1591(a)(1), (a)(2), & (b)(1).

Prior to sentencing, both Carter and Coleman filed extensive objections to their presentence investigation reports. Carter argued that his PSR contained information about counts dismissed as part of his plea agreement and wrongly increased his offense level for "unduly influenc[ing] a minor to engage in prohibited sexual conduct," U.S.S.G. § 2G1.3(b)(2)(B), and for "the commission of a sex act or sexual contact," U.S.S.G. § 2G1.3(b)(4)(A). Coleman claimed that his Guidelines range was improperly enhanced by additional victims when he had not pleaded guilty to conduct involving those victims. The district court[1] overruled these objections and made factual findings before imposing their sentences. Carter and Coleman were sentenced to 175 and 300 months in prison, respectively.

---

[1] The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

Sarina pleaded guilty as charged to interstate transportation of an individual to engage in prostitution, 18 U.S.C. § 2421, and conspiracy to engage in sex trafficking by force, fraud, or coercion, 18 U.S.C. § 1594(c). The indictment described the conspiracy as one "to cause 'Victim 4' to engage in a commercial sex act, in violation of 18 U.S.C. § 1591(a)(1), (a)(2) & (b)(1)."

Ronzell and Brown also pleaded guilty to charges under § 1594(c), and the indictment described their offenses in the same way as Sarina's except they conspired to traffic a different victim. Based on the conspiracy charges, the district court set a base offense level of 34 for all three defendants. The district court sentenced Sarina to 135 months in prison, Ronzell to 36 months, and Brown to 50 months. Each was sentenced below their Guidelines range—Ronzell and Brown significantly so.

## II.

Carter and Coleman both argue that the district court erred when applying enhancements to their offense levels. We review the district court's construction and application of the Guidelines *de novo* and its factual findings for clear error. *United States v. Cordy*, 560 F.3d 808, 817 (8th Cir. 2009).

## A.

Carter argues that the district court erred when it applied an enhancement for exerting "undue influence" over Minor Victim A. *See* U.S.S.G. § 2G1.3(b)(2)(B). Whether a defendant unduly influenced a victim is a factual question subject to clear error review. *See United States v. Hagen*, 641 F.3d 268, 270 (8th Cir. 2011). The key question is "whether a participant's influence over the minor compromised the voluntariness of the minor's behavior." U.S.S.G. § 2G1.3(b)(2)(B) cmt. 3(B).

At sentencing, the evidence showed Carter had physically abused Minor Victim A. In one instance, he told her to get out of his car and then drove away while she

was still getting out, hurting her and causing her to fall. Carter's co-defendant proffered that he saw Carter hit Minor Victim A. Another victim reported seeing pictures of Minor Victim A's face when her "eye was black, literally, like black, it was swollen shut; her nose was bleeding" as a result of an altercation with Carter. Carter also emotionally abused Minor Victim A. He would get angry with her when she wouldn't "go on a date" he had arranged. Based on this evidence and given that Carter was nine years older than Minor Victim A, the district court did not clearly err when it found that Carter unduly influenced her and compromised the voluntariness of her behavior.

## B.

Carter next argues that the district court erred by applying the enhancement for an offense involving "the commission of a sex act or sexual contact." *See* U.S.S.G. § 2G1.3(b)(4)(A). The Guidelines authorize a two-level increase if "the offense involved the commission of a sex act or sexual contact," *id.*, or if the offense was not one under 18 U.S.C. § 1591(b) and " involved a commercial sex act," U.S.S.G. § 2G1.3(b)(4)(B). Carter does not dispute that sex acts occurred. Rather, he makes the purely legal argument that the enhancement should not apply because his offense under § 1591(b)(1) involved *commercial* sex acts, which he views as only enhancing convictions under different statutes. Any other reading, he argues, would reduce the special rule for commercial sex acts to "mere surplusage."

We disagree. Section 2G1.3(b)(4)(A) imposes a two-level increase for any offense to which § 2G1.3 applies that "involved the commission of a sex act or sexual contact." Because Carter's offense falls under § 2G1.3 and involved the commission of a sex act, the enhancement applies. This reading does not render § 2G1.3(b)(4)(B) "mere surplusage." Where (b)(4)(A) applies to offenses that"*involved the commission of* a sex act or sexual contact," (b)(4)(B) applies only to offenses other than those under § 1591(b) but is triggered wherever the offense "*involved* a commercial sex act." Because it does not require "the commission of" a commercial sex act, the

-6-

(b)(4)(B) enhancement may be applied, for example, in a case where someone attempts to coerce a minor into committing a commercial sex act, but no sex act ultimately occurs. *See* 18 U.S.C. § 2422(b) (prohibiting, subject to jurisdictional elements, coercion of minors to engage in criminal sexual activities). The district court properly applied the enhancement here.

C.

Both Carter and Coleman challenge their enhancements for promoting commercial sex acts with additional victims (Victims 1 and 2 in Carter's case, Victims 5 through 9 in Coleman's). They argue that because they did not plead guilty to any charges involving those additional victims and because they objected to the facts related to those victims in their PSRs, it was inappropriate for the district court to consider those victims at sentencing.

Both U.S.S.G. § 2G1.3(d), which applies to Carter, and § 2G1.1(d), which applies to Coleman, prescribe how to account for additional victims. Under these provisions, where the "relevant conduct of an offense of conviction" includes promoting a commercial sex act with respect to additional individuals, whether or not those individuals are referenced in the count of conviction, each victim is treated as though they were represented by a separate count." U.S.S.G. §§ 2G1.1 cmt. 5, 2G1.3 cmt. 6. "Relevant conduct" includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction." U.S.S.G. § 1B1.3(a)(1)(A).

Coleman's additional victims are relevant conduct under this definition. Although the charges relating to these victims were dismissed, they still may be considered to enhance Coleman's sentence. *See United States v. Williams*, 879 F.2d 454, 457 (8th Cir. 1989). The broad language in § 1B1.3 "indicates the Sentencing Commission's intent to give courts the discretion to consider a broad range of

conduct in making adjustments," and so we have declined to infer a limitation precluding courts from considering conduct related to dismissed counts. *Id.*

The claim that Coleman's enhancement lacked supporting factual findings also fails. The district court made the findings necessary to apply the enhancements to Coleman and, to the extent that he argues that his plea agreement forbids the attribution of additional victims, he is mistaken. Coleman's plea agreement left the Government free to "make whatever comment and evidentiary offer [it] deem[s] appropriate at the time of sentencing," notwithstanding the dismissal of the counts directly related to these victims.

All of the above would apply equally to Carter, but for one important difference between the Guidelines provisions at issue. Section 2G1.3(d), unlike § 2G1.1(d), specifies that the additional victims used to enhance a sentence under that section must be minors, and Carter's were not. Carter therefore argues that his sentence should not have been enhanced under § 2G1.3(d). Carter first identified this issue in his reply brief and so we can decline to consider it. *United States v. Head*, 340 F.3d 628, 630 n.4 (8th Cir. 2003). We do so here, because it is clear from the record that the district court would have given Carter the same sentence regardless of his Guidelines recommendation.

III.

Coleman makes two arguments that we cannot consider on appeal. First, he argues that the district court should not have followed U.S.S.G. § 2G1.1(a)(1) to apply a base offense level of 34 to his conviction for coercing an individual to engage in prostitution. In his view, this provision sets up an excessive disparity not based on empirical data between the base level for offenses under 18 U.S.C. § 1591(b)(1) and those under all other statutes.

We do not consider policy arguments about the Guidelines on appeal. *United States v. Riehl*, 779 F.3d 776, 778 (8th Cir. 2015) (per curiam). District courts are free to vary from the Guidelines based on them, but it is not an abuse of discretion for a district court to decline to do so. *United States v. Sharkey*, 895 F.3d 1077, 1082 (8th Cir. 2018).

Second, Coleman argues that the district court erred when it denied his motion for a downward departure for overrepresented criminal history under U.S.S.G. § 4A1.3(b)(1). We do not have authority to review that decision because the district court recognized it had the power to depart downward and Coleman does not argue it had an unconstitutional motive for failing to do so. *United States v. Woods*, 596 F.3d 445, 449 (8th Cir. 2010).

## IV.

Finally, both Coleman and Carter argue the district court committed procedural error at sentencing and their sentences were substantively unreasonable. We first assess whether the district court committed significant procedural error. *United States v. Williams*, 624 F.3d 889, 896 (8th Cir. 2010). If we find none, we review the substantive reasonableness of the sentences, applying a deferential abuse of discretion standard. *United States v. Stoner*, 795 F.3d 883, 884 (8th Cir. 2015).

Both Coleman and Carter argue the district court procedurally erred by relying but never ruling on objected to facts in their PSRs. *See United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (A district court commits procedural error if it sentences "based on clearly erroneous facts."). Nothing in the record supports this argument. The district court made factual findings at Carter's sentencing that supported its conclusion that he behaved in a "depraved" way and that society needed protection from him. Carter has failed to identify any moment during his sentencing when the district court relied on still-disputed facts. *See* Carter Sent. Tr. 33. The record is even clearer in Coleman's case. The district court overruled all

his objections to the PSR and found that it was "factually accurate as to all material matters" and sentenced him based on that finding. Coleman Sent. Tr. 87–88.

Coleman claims that his sentence is substantively unreasonable because the district court failed to account for his history and characteristics and considered his co-defendants' actions in setting his sentence.[2] A sentence may be substantively unreasonable if a district court fails to consider a relevant factor that deserves significant weight, gives significant weight to an inappropriate factor, or commits a clear error of judgment in weighing the appropriate factors. *Stoner*, 795 F.3d at 884. Again, Coleman's argument finds no support in the record. In fact, the court considered each § 3553(a) factor, specifically mentioned Coleman's criminal history, and grappled with the "astounding depravity" of Coleman's conduct. We also note that Coleman's sentence is below his Guidelines range. It is "nearly inconceivable" that it could be substantively unreasonable. *United States v. Lazarski*, 560 F.3d 731, 733 (8th Cir. 2009).

V.

Sarina, Ronzell, and Brown all object to the base offense level of 34 for their convictions for conspiracy to engage in sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. § 1594(c). We review the proper construction of the Guidelines *de novo*. *Cordy*, 560 F.3d at 817.

---

[2] Carter also claims that his sentence is substantively unreasonable, Carter Br. 30, but for support he primarily rehashes his argument that the district court wrongly considered objected-to portions of his PSR. He also claims his sentence was substantively unreasonable because the district court failed to explain its sentence in a way that would facilitate our review. *Id.* at 34–35. This is really a claim of procedural error, *see Feemster*, 572 F.3d at 463, and in any case the district court provided an adequate explanation of its reasons.

Conspiracies punished under § 1594(c) are not covered by a specific offense Guideline, so we begin with the catch-all provision at U.S.S.G. § 2X1.1. Section 2X1.1(a) sets the base offense level for a conspiracy conviction not covered by a specific Guideline as the "base offense level from the guideline for the [underlying] substantive offense." The indictment lists the underlying substantive offense for all three of these defendants as 18 U.S.C. § 1591(a)(1), (a)(2), & (b)(1). For those offenses, we refer to § 2G1.1, which prescribes a base offense level of 34 "if the offense of conviction is 18 U.S.C. § 1591(b)(1)" and 14 if "otherwise." Because the underlying substantive offense for all three defendants is § 1591(b)(1) and the applicable Guidelines provision (§ 2X1.1) directs that we treat these defendants as though they were convicted under § 1591(b)(1), we conclude the district court correctly assigned all three of these defendants base offense levels of 34. *See United States v. Sims*, 957 F.3d 362, 363 (3d Cir. 2020) (following the same steps to reach a base offense level of 34).

The defendants suggest otherwise. Noting that § 2G1.1 directs that the base offense level for any convictions other than those under § 1591(b)(1) should be 14, they argue they should have received the lower base offense level for their convictions under § 1594(c). This argument only works if we read § 2G1.1 in isolation, but we cannot do that. Section 2G1.1 is not the applicable Guideline for convictions under § 1594(c). We only get there through § 2X1.1, so we must read § 2G1.1 in light of § 2X1.1. Even if that were not the case, the specific guidance from § 2X1.1 comports with the general rule that "[u]nless otherwise specified, an express direction to apply a particular factor only if the defendant was convicted of a particular statute includes the determination of the offense level where the defendant was convicted of conspiracy . . . in respect to that particular statute." U.S.S.G. § 1B1.3, cmt. 7. Following both general interpretive principles for the Guidelines and the specific provisions at issue here, the district court assigned the correct base offense levels.

The defendants rely on *United States v. Wei Lin*, 841 F.3d 823 (9th Cir. 2016) to support their reading of § 2G1.1. In *Wei Lin*, the Ninth Circuit held that the base offense level of 34 applied only in cases where defendants were subject to the statutory 15-year mandatory minimum sentence described in § 1591(b)(1). *Id.* at 826. Because conspiracies under § 1594(c) are not subject to those minimums, the *Wei Lin* rule prevents any conspiracy conviction from receiving a base offense level of 34.

We do not believe *Wei Lin* should govern our decision here. *See Sims*, 957 F.3d at 364 (noting that applying *Wei Lin* "lead[s] to absurd results"). The Ninth Circuit arrived at its rule based on what it believed was "most likely what the Sentencing Commission intended." *Id.* at 827. Because the base offense level of 34 in § 2G1.1(a)(1) was created in response to Congress adding the 15-year mandatory minimum for trafficking victims under 14 years old, the *Wei Lin* court concluded that "the Commission likely intended § 2G1.1(a)(1) to apply only when the defendant received a fifteen-year mandatory minimum sentence." *Id.* Compelling as this history might be, "[w]hen construing the Guidelines, we look first to the plain language, and where that is unambiguous we need look no further." *United States v. Bah*, 439 F.3d 423, 427 (8th Cir. 2006). And here, where the applicable Guidelines provision directs us to apply the provisions of § 2G1.1(a)(1) as though these defendants were convicted of violating § 1591(b)(1), we find no ambiguity.[3]

\*      \*      \*

Finding no error in the defendants' sentences, we affirm.

_____

_____

[3] The application of the Guidelines is clearer here than it was in *Wei Lin*. Wei Lin's indictment only charged conspiracy to violate § 1591(a) and the conduct at issue would have qualified him, had he been convicted of the substantive offense, for sentencing under § 1591(b)(1). 841 F.3d at 825. By contrast, each of these three defendants were charged with conspiring to violate § 1591(b)(1) itself. We need look no further than the indictment and U.S.S.G. §§ 2X1.1 & 2G1.1 to properly set the base offense levels for these defendants.