# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2581
_____

United States of America

*Plaintiff - Appellee*

v.

Deonte Womack

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: June 13, 2025
Filed: August 4, 2025

_____

Before COLLOTON, Chief Judge, ARNOLD and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A jury convicted Deonte Womack of two counts of sex trafficking by force, fraud, or coercion. *See* 18 U.S.C. § 1591(a). The district court sentenced him to 235 months' imprisonment. Womack appeals, challenging the admission of testimony from one of his victims, the denial of his proposed lesser included offense jury instruction, the denial of his motion for judgment of acquittal due to insufficient evidence, and the calculation of his base offense level at sentencing. We affirm with

respect to all but the calculation of his base offense level, and we remand for resentencing.

## I. Background

On July 23, 2019, the Little Rock, Arkansas Police Department ("LRPD") executed a sting operation targeting illegal prostitution. An undercover officer arranged to meet with A.B., a woman working as a prostitute for Womack, in a hotel room, and upon arrival handed A.B. $400 in cash. After A.B. confirmed that she would have sex with the undercover officer in return for the payment, other LRPD officers entered the room and arrested her. Following her arrest, A.B. protected Womack by declining to identify him in her statements to the LRPD.

Months later, in late October 2019, after having suffered a serious beating by Womack, A.B. changed her mind and sought help from law enforcement. She reached out to the LRPD and explained that she worked for Womack as a prostitute. Soon after, the LRPD brought in the FBI, which opened an investigation into Womack. The FBI interviewed A.B. and also J.G. and T.S., two other women in Womack's prostitution ring.

During its investigation, the FBI learned that Womack's ring included at least twelve women. He handled administrative matters such as buying lingerie, posting online advertisements on escort sites, driving women to their "dates," and handling the money. He also provided housing for the women, whether at hotels, Airbnbs, or homes owned by Womack or his family. For some of the women, Womack retained all of the money they earned, and he compensated them through housing and by paying their bills. Others split up to half of their earnings with Womack.

A.B., J.G., and T.S. each recounted to the FBI that Womack physically abused them. Incidents included Womack violently throwing them onto the ground or across a room and choking them to the point of unconsciousness. Womack also

stalked, harassed, and threatened physical violence against women who tried to leave his prostitution ring, which caused them to be afraid to leave.

Following the FBI's investigation, Womack was arrested on February 6, 2020. The indictment charged him with four counts: three counts of sex trafficking by force, fraud, or coercion—one count relating to each of A.B., J.G., and T.S.—*see* 18 U.S.C. § 1591(a), and one count of witness intimidation, *see id.* § 1512(b)(1). Womack pleaded not guilty, and the case proceeded to trial.

At trial, A.B., J.G., and T.S. each testified about their experiences working as prostitutes for Womack. The Government sought to introduce additional testimony from a fourth woman, C.C., whose prostitution for Womack was not part of the charged conduct. During the pretrial conference, the Government explained that they expected Womack to defend himself by arguing that J.G., A.B., and T.S. voluntarily engaged in prostitution—thus, he did not force, threaten, or coerce them. The Government sought to counter this narrative and previewed that C.C. would testify that she affirmatively told Womack that she did not want to prostitute but was compelled by Womack's use and threats of force and coercion. C.C.'s testimony, according to the Government, would be admissible under Federal Rule of Evidence 404(b)(2) to prove Womack's knowledge, intent, and motive to use force, threats of force, fraud, or coercion. Womack responded that C.C.'s testimony would constitute inadmissible evidence of his other bad acts. *See* Fed. R. Evid. 404(b)(1). The district court decided to allow C.C. to testify, but read a limiting instruction to the jury, directing them to consider her testimony "only for the limited purpose of deciding whether Mr. Womack had the state of mind or intent necessary to commit the crime charged in the indictment." C.C. testified that Womack forced her to have sex with men in exchange for money, posted advertisements without her permission, and confiscated her phone, ID, and other belongings to prevent her from leaving.

At the close of the Government's evidence, Womack moved for judgment of acquittal, which the district court granted with respect to one of the counts charging him with sex trafficking by force, fraud, or coercion (the one relating to T.S.) and

the count charging him with witness intimidation. Womack then testified in his own defense and, after the close of all evidence, renewed his motion for judgment of acquittal as to the two remaining counts of sex trafficking by force, fraud, or coercion (relating to A.B. and J.G.). The district court denied the motion.

Before closing arguments, the district court read instructions to the jury. Womack requested that the district court instruct the jury on a lesser included offense of interstate transportation of an individual to engage in prostitution. *See* 18 U.S.C. § 2421. The district court declined to submit Womack's proposed lesser included offense instruction. The jury ultimately returned guilty verdicts on the two remaining counts.

At sentencing, Womack objected to the base offense level calculation in the Presentence Investigation Report ("PSR"). The PSR calculated Womack's base offense level as 34 pursuant to the sentencing guidelines. *See* U.S.S.G. § 2G1.1(a)(1). Womack argued that § 2G1.1(a)(1) did not apply to him, and that his base offense level should instead have been 14. *See id.* § 2G1.1(a)(2). The district court overruled Womack's objection. The guidelines set an advisory range of 235-293 months' imprisonment, and the district court sentenced Womack to 235 months' imprisonment followed by five years of supervised release. Following entry of judgment, Womack timely appealed.

## II. Discussion

Womack makes several challenges on appeal. First, he argues that the district court erred in admitting C.C.'s testimony under Rule 404(b). Second, he contends that the district court erred in declining to give his proffered lesser included offense jury instruction. Third, he challenges the district court's denial of his motion for judgment of acquittal on the two counts of sex trafficking by force, fraud, or coercion submitted to the jury, arguing that the evidence was insufficient to support his conviction. And fourth, he disputes the district court's calculation of his base offense level at sentencing. We address each in turn.

-4-

**A. Admission of Testimony**

Womack challenges the district court's decision to admit C.C.'s testimony, arguing that because the testimony concerned conduct for which Womack was not charged, it constituted inadmissible evidence of his other bad acts and propensity to engage in the kind of conduct C.C. described. *See* Fed. R. Evid. 404(a) and (b). "We review the district court's evidentiary rulings for an abuse of discretion, giving great deference to the district court's balancing of the probative value and prejudicial impact of the evidence." *United States v. Wright*, 993 F.3d 1054, 1061 (8th Cir. 2021) (internal quotation marks omitted).

"Rule 404(b) permits the admission of evidence of a criminal defendant's 'crime, wrong, or act' to prove the defendant's 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *United States v. Atkins*, 52 F.4th 745, 753 (8th Cir. 2022) (quoting Fed. R. Evid. 404(b)). "Such evidence must be (1) relevant to a material issue; (2) similar in kind and not overly remote in time to the crime charged; and (3) supported by sufficient evidence." *Id.* (internal quotation marks omitted). The potential prejudice of the evidence must also not substantially outweigh its probative value. *Id.* at 753 (quoting Fed. R. Evid. 403).

C.C.'s testimony met each criterion. First, it was relevant to a material issue. A core part of Womack's defense at trial was that A.B. and J.G. voluntarily worked as prostitutes. C.C.'s testimony that Womack forced her to have sex with other men for money—including descriptions of how he took her phone, ID, and other belongings to prevent her from leaving his orbit—was therefore directly relevant to the material issue of whether Womack used force, fraud, or coercion against the women. Second, C.C.'s experiences were similar in kind and close in time to the crimes charged. C.C. prostituted for Womack during the time period outlined in the indictment. Third, C.C.'s testimony was supported by sufficient evidence. Not only did she testify at Womack's trial about her experiences, but both she and her mother were in contact with the FBI about the abuse as far back as 2017. Finally, the

potential unfair prejudice to Womack did not substantially outweigh the probative value of C.C.'s testimony.  We typically do not find that Rule 404(b) evidence "was unfairly prejudicial when the district court gave an appropriate limiting instruction, instructing the jury not to use the evidence as proof of the acts charged in the indictment."  *United States v. Cameron*, 99 F.4th 432, 436 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 314 (2024).  The district court gave an appropriate limiting instruction here, and Womack fails to point to anything in the record that suggests that the testimony was overly prejudicial.  Because C.C.'s testimony was proper under Rule 404(b), the district court did not abuse its discretion in admitting her testimony.

## B. Jury Instructions

We next turn to the district court's denial of Womack's proposed lesser included offense jury instruction.  Generally, a "defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater."  *United States v. Parker*, 993 F.3d 595, 604 (8th Cir. 2021).  At trial, Womack proposed a jury instruction for the lesser included offense of interstate transportation for prostitution, *see* 18 U.S.C. § 2421, relating to a 2019 trip he took to Las Vegas along with several of the women.

"We review the denial of a lesser-included offense instruction for abuse of discretion."  *Parker*, 993 F.3d at 604.  A defendant is entitled to a lesser included offense instruction when:

> (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) there is some evidence which would justify conviction of a lesser offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included

offense; and (5) there is mutuality, i.e., a charge may be demanded by either the prosecution or defense.

*Id.* n.5. Womack's proffered lesser included offense instruction does not meet the second requirement—that the corresponding elements of the lesser and greater offenses be identical. Section 2421 makes it a crime to "knowingly transport[] any individual in interstate or foreign commerce . . . with intent that such individual engage in prostitution." 18 U.S.C. § 2421(a). Section 1591(a) makes it a crime to "knowingly," "in or affecting interstate or foreign commerce, . . . recruit[], entice[], harbor[], transport[], provide[], obtain[], advertise[], maintain[], patronize[], or solicit[] by any means a person" with knowledge or reckless disregard of the fact "that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act." *Id.* § 1591(a). The elements of § 2421(a) are not identical to the corresponding elements of § 1591(a). First, "knowingly transport[ing] any individual in interstate or foreign commerce, " *id.* § 2421(a), is distinct from sex trafficking "in or affecting interstate or foreign commerce" without the element of transporting the person, *id.* § 1591(a). Second, the *mens rea* requirements of the statutes are different: § 2421(a) requires that the offender "inten[d]" to have the individual engage in prostitution, whereas § 1591(a) requires only "know[ledge]" or "reckless disregard." Because § 2421(a) contains elements that § 1591(a) does not, the district court did not abuse its discretion by rejecting Womack's proffered lesser included offense jury instruction.[1]

## C. Sufficiency of the Evidence

The district court granted judgment of acquittal on one of the sex trafficking counts and the witness intimidation count, but Womack challenges the district court's subsequent denial of his motion for judgment of acquittal on the two remaining sex trafficking counts. He argues that there was insufficient evidence that

[1]Because Womack's proffered lesser included offense instruction fails to satisfy the second prong, we need not address, and therefore do not decide, whether the other four prongs are met.

-7-

he used "force, threats of force," or "coercion" to "cause" A.B. and J.G. to engage in prostitution. *See* 18 U.S.C. § 1591(a). "We review de novo the sufficiency of the evidence, viewing the evidence in the light most favorable to the jury verdict and giving the verdict the benefit of all reasonable inferences." *United States v. Foard*, 108 F.4th 729, 735 (8th Cir. 2024). "We reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.* "[A] victim's testimony alone is sufficient to persuade a reasonable jury of the defendant's guilt beyond a reasonable doubt." *Id.* (alteration in original).

Here, the Government presented evidence sufficient for a reasonable jury to conclude beyond a reasonable doubt that Womack used force and threats of force to coerce A.B. and J.G. into working as prostitutes. Section 1591 defines "coercion" to include "threats of serious harm to . . . any person." 18 U.S.C. § 1591(e)(2). "Serious harm," in turn, includes "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious . . . to compel a reasonable person . . . to perform or to continue performing commercial sexual activity in order to avoid incurring that harm." *Id.* § 1591(e)(5). Both A.B. and J.G. testified to having suffered physical abuse by Womack on multiple occasions. A.B. testified that one time she packed her belongings in an attempt to leave Womack, and he responded by tossing her across the room and striking her, causing bruises. A.B. corroborated her testimony with photographs that showed her injuries. She also told law enforcement that she continued working for Womack because she was afraid of what he would do if she stopped. Similarly, J.G. testified that, one time after she tried to leave Womack, he choked her to the point of unconsciousness, leaving her "terrified" and disinclined to try to leave again. When she tried to leave on other occasions, Womack stalked and harassed her and her family members until she returned. The jury also heard testimony that Womack exerted considerable control over the women, including posting online advertisements, providing them with housing, and handling their money—taking as much as all of the earnings of some women. Womack's degree of control over the women's lives led both A.B. and J.G. to feel "trapped" in his orbit. A reasonable jury could conclude from this evidence that Womack used force, threats of force, or

coercion to cause A.B. and J.G. to engage in prostitution. The district court did not err in denying Womack's motion for judgment of acquittal.

### D. Sentencing

Finally, we address Womack's challenge to the calculation of his base offense level. The PSR calculated a base offense level of 34, which the district court applied over Womack's objection. "We review the district court's . . . construction and application of the sentencing guidelines *de novo*." *United States v. Edwards*, 111 F.4th 919, 929 (8th Cir. 2024).

Under the guidelines, the base offense level for promoting a commercial sex act is 34 "if the offense of conviction is 18 U.S.C. § 1591(b)(1)," or 14 if otherwise. U.S.S.G. § 2G1.1(a). The Government argues that the higher base offense level was warranted because the jury's verdict matched the language of § 1591(b)(1). Indeed, subsections 1591(a) and (b)(1) include similar language referring to "means of force," "threats of force," "fraud," and "coercion," and the jury found Womack guilty of "sex trafficking by force, fraud, or coercion." However, the two subsections are not identical. Subsection (a) makes it a crime to "know[]," or act "in reckless disregard of the fact, that means of force, threats of force, fraud, [or] coercion . . . will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a). Subsection (b)(1) applies a mandatory minimum 15-year prison sentence for violators of § 1591(a) "if the offense was effected by means of force, threats of force, fraud, or coercion." *Id.* § 1591(b)(1). Womack's correct base offense level under the guidelines depends on whether the jury's verdict supports a conviction under (b)(1). *See* U.S.S.G. § 2G1.1(a).

It does not. Womack was indicted for, and convicted of, violating § 1591(a). Neither the indictment nor the jury's verdict form mentioned § 1591(b)(1). The indictment specified only § 1591(a) as the charged offense and tracked that subsection's language of "know[ledge]" and "reckless disregard," language not shared by (b)(1). *See* 18 U.S.C. § 1591(a) and (b)(1). The jury neither convicted

Womack of violating (b)(1), nor made a specific finding that Womack's "was effected by means of force, threats of force, fraud, or coercion," in violation of (b)(1). *See id.* § 1591(b)(1). Because Womack's offense of conviction was not § 1591(b)(1), his base offense level should have been 14, not 34. *See* U.S.S.G. § 2G1.1(a).[2]

### III. Conclusion

For the foregoing reasons, we affirm Womack's conviction and remand for resentencing.

_____

_____

[2]The Government points to *United States v. Carter*, 960 F.3d 1007 (8th Cir. 2020), and *United States v. Unpradit*, 35 F.4th 615 (8th Cir. 2022), to argue that § 2G1.1(a) applies a base offense level of 34 to violations of § 1591(a). However, the respective defendants in both of those cases were also charged with and convicted of violating (b)(1). *See Carter*, 960 F.3d at 1014; *United States v. Ruttanamongkongul*, 2019 WL 719203 at *1 (D. Minn. Feb. 20, 2019) (unpublished) (quoting from the indictment charging several of the co-defendants in *Unpradit* and listing both § 1591(a) and (b)(1) as underlying offenses), *aff'd sub nom. Unpradit*, 35 F.4th 615. Accordingly, neither case stands for the proposition that those convicted of § 1591(a), but not (b)(1), receive a base offense level of 34 pursuant to § 2G1.1(a) of the guidelines.