**F I L E D**

**UNITED STATES COURT OF APPEALS**

**January 24, 2007**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

VICTOR CASTELLON,

Defendant - Appellant.

No. 06-2044

(D. New Mexico)

(D.C. No. CR-05-1018-JC)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **ANDERSON**, and **GORSUCH**, Circuit Judges.

Victor Castellon pled guilty to one count of engaging in illicit sexual conduct in foreign commerce, in violation of 18 U.S.C. § 2423(c). He was sentenced to seventy-one months' imprisonment, followed by three years of supervised release. He appeals his sentence. We affirm.

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

In mid-January 2005, Castellon was a single 41-year-old working at Penske Truck Rentals in Albuquerque, New Mexico. While at work one day, Castellon received a cell phone call from an unknown number. Because he did not recognize the number, he did not answer the call. Instead, he called the number back and was told by a young woman that the caller was her friend. Castellon informed the young woman that she had called the wrong number and hung up.

The next day, he received several more calls from this same number, but when he answered the calls the caller hung up. Castellon refused to answer calls from that number. A similar pattern continued the next day. Then, Castellon received a call from a different number, which he answered, but the caller hung up. The caller from the new number then sent Castellon a text message inquiring if he was "Eric from the bowling alley." Castellon responded that the caller/messager must have the wrong number. The caller sent additional inquiring text messages, and Castellon and the caller, who turned out all along to have been 15-year-old Aleah, the victim in this case, embarked on a regular exchange of text messages and phone calls.

Castellon and Aleah met in person on February 4, 2005, when, after asking Aleah what she wanted for Valentine's Day, Castellon went to Aleah's school to bring her, in accordance with her request, a box of chocolates, a rose, a Wendy's lunch and a card. School authorities became concerned and called the police.

The police spoke to both Aleah and, the next day, Castellon, and told Castellon to have no further contact with Aleah.

Castellon had no further contact with Aleah for several weeks. Then, Aleah called him. Castellon asked her why she had called him and told her that he would get in trouble if he talked to her. Aleah told Castellon that she missed him. They then resumed their daily text messaging and phone calls. After several requests from Aleah for Castellon to pick her up, he finally did so at 11 p.m. on March 25 near the shop her mother operated, after Aleah had snuck out of her house unbeknownst to her parents.

Castellon drove Aleah to a hotel where they had sexual intercourse. Castellon paid for the hotel room with his credit card. Castellon then dropped Aleah off at the spot where he had picked her up. Aleah initiated another similar sexual encounter the next night, again after sneaking out of her house. During the following week, Castellon picked Aleah up twice from school and took her to lunch.[1]

Aleah then asked Castellon to pick her up the following Saturday night, April 2, at the same time and location. They again went to a hotel and had sexual intercourse. As he did on the prior occasions, Castellon paid for the hotel room with his credit card. On this occasion, however, Aleah's parents discovered she

---

[1] Castellon disputes this, but without citation to any place in the record to support his claim. Our recitation of the facts in this case is from the presentence report prepared by the United States Probation Office in advance of sentencing.

was missing and called the police. They also left a message on Aleah's cell phone, which Aleah saw when she and Castellon were in the hotel room.

Aleah did not want to call her parents and she did not want to return to her house. She eventually sent her parents a text message indicating that she would not come home. Castellon and Aleah left the hotel and Castellon attempted to drop her off near her mother's shop, but Aleah refused to get out of the car. Castellon tried to drop her off at another location and then back again at her mother's shop, but Aleah did not want to go.

Castellon then told Aleah he was going to leave town, and she indicated she wished to accompany him. They drove through the night to El Paso, Texas. Aleah continued to receive messages from her parents. When Castellon purchased a cell phone charger in El Paso and charged his cell phone, he discovered that he too had received messages from Aleah's parents.

On April 3, Castellon and Aleah, after driving through the night from El Paso, arrived in Ciudad Juarez, Mexico, where Castellon rented a hotel room. Castellon and Aleah again had intercourse. The next day, Castellon left Aleah at the hotel in Ciudad Juarez while he returned to El Paso to look for work. When he returned to the hotel, Castellon again had intercourse with Aleah. During this time, Aleah made no effort to contact her parents.

When they were returning to El Paso on April 5, United States border officials stopped Castellon and Aleah after making various inquiries about the two

-4-

of them.[2] When Castellon and Aleah were interviewed separately, they gave fundamentally similar accounts of their entire relationship.

As indicated, Castellon pled guilty to the single count of engaging in illicit sexual conduct in foreign commerce, in violation of 18 U.S.C. § 2423(c). The United States Probation Office prepared a presentence report ("PSR"). The PSR assigned a two-level increase in Castellon's total offense level under the United States Sentencing Commission, Guidelines Manual ("USSG") (2004) §2G1.3(b)(2)(B), which imposes a two-level increase where the defendant "unduly influenced a minor to engage in prohibited sexual conduct."[3] By letter, Castellon objected to the enhancement and he then followed that with a formal written objection to the enhancement. His objections included excerpts from an interview the FBI conducted with Aleah's friend, Arianna, which described Aleah's behavior before she met Castellon as follows:

---

[2]Aleah apparently had no identification documents when she tried to cross the border. When agents learned that her parents lived in Albuquerque and that Castellon did not know them, and also because of the obvious difference in their ages, the agents referred Castellon and Aleah to a secondary inspection area. During the secondary inspection, agents learned that Aleah had been reported missing and they later discovered that an arrest warrant had been issued for Castellon for taking a minor out of New Mexico without authorization. The Federal Bureau of Investigation then arrested Castellon and detained Aleah until her father could pick her up.

[3]Castellon's total adjusted offense level was calculated as 25 and his criminal history category was I. This resulted in a Guideline advisory sentencing range of fifty-seven to seventy-one months. Castellon does not object to any other aspects of his sentence other than the "undue influence" enhancement and the length of the sentence.

> [Aleah] L. is on the internet and text messages a lot. [Aleah] L. has
> a lot of boyfriends that she meets online or by text messaging.
> [Aleah] L. has one boyfriend who goes by "lucky" who [Aleah] L.
> has seen in person. [Aleah] L. and [Arianna] A. often meet people
> online or through text and than (sic) arrange to meet them in person.
> [Arianna] A. has been with [Aleah] L. at Cottonwood Mall in
> Albuquerque when the (sic) meet in person. The people are always
> males and are usually about [Aleah] L. and [Arianna] A.'s age.

First Addendum to PSR. Another friend of Aleah's confirmed in her interview with the FBI that Aleah had a boyfriend named Lucky and yet another friend stated that she knew that Aleah frequently visited AOL chatrooms and "gave out her name and telephone number to strangers." Id. This information was added to the PSR in the First Addendum.

The Probation Office responded that it still felt the enhancement was appropriate. In the alternative, in his objections Castellon sought the imposition of a forty-six month sentence, which was the equivalent of the low end of the Guideline Range calculated without the two-level enhancement for undue influence.

At sentencing, Castellon reiterated his written objections to the undue influence enhancement, as well as his request for a forty-six month sentence. The district court rejected his arguments and sentenced him to seventy-one months' imprisonment. This appeal followed.

On appeal, Castellon argues: (1) the district court erred in applying the two-level enhancement for undue influence; (2) assuming the district court did not

err in applying the undue influence enhancement, under the unique facts and circumstances of this case the seventy-one month sentence is unreasonable; and (3) the district court's application of the guideline presumption of undue influence as a mandatory presumption violated Castellon's Fifth and Sixth Amendment rights to due process and to a jury trial.

## DISCUSSION

### I. Undue Influence Enhancement

Since the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), the Sentencing Guidelines are advisory, not mandatory. Further, "[w]e review sentences imposed by the district court for reasonableness." United States v. Galarza-Payan, 441 F.3d 885, 887 (10th Cir.) (citing Booker, 543 U.S. at 260-65), cert. denied, 127 S. Ct. 434 (2006). "A properly calculated Guideline sentence is 'entitled to a rebuttable presumption of reasonableness.'" United States v. Portillo-Quezada, 469 F.3d 1345, 1356 (10th Cir. 2006) (quoting United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir. 2006)).[4] We continue to "review the district court's legal conclusions de novo and its factual determinations for clear error." Galarza-Payan, 441 F.3d at 889.

_____

[4]We note that the question of the propriety of according a presumption of reasonableness to a properly calculated Guidelines sentence is now before the Supreme Court. United States v. Rita, 177 Fed. Appx. 357, 2006 WL 1144508 (4th Cir.), cert. granted in part, 127 S. Ct. 551 (2006) (No. 06-5754). As we explain more fully, infra, that does not affect the outcome of this case.

The commentary to §2G1.3(b)(2)(B) provides that "[i]n determining whether subsection (b)(2)(B) applies, the court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior." Id., comment. (n.3(B)). The commentary further provides:

> In a case in which a participant is at least 10 years older than the minor, there shall be a rebuttable presumption, for purposes of subsection (b)(2)(B), that such participant unduly influenced the minor to engage in prohibited sexual conduct. In such a case, some degree of undue influence can be presumed because of the substantial difference in age between the participant and the minor.

Id. Castellon argues the district court made no attempt to closely consider the evidence in this case to determine whether Castellon exerted influence over Aleah that compromised the voluntariness of her behavior. Rather, he alleges the court relied solely on the age difference between Aleah and Castellon, thereby turning the rebuttable presumption into a mandatory presumption, or, at best, erroneously placing on Castellon the burden of persuading the court that he did not exert undue influence.

The Guidelines do not provide any explicit definition of what constitutes "undue influence." However, the sentencing enhancement "was added to the Guidelines in 2000 to capture those cases where 'coercion, enticement, or other forms of undue influence by the defendant . . . compromised the voluntariness of the victim's behavior and, accordingly, increased the defendant's culpability for

-8-

the crime." USSG §2A3.2, 2000 comments, background.[5] The government bears the burden of proving sentencing enhancements. United States v. Chavez-Diaz, 444 F.3d 1223, 1227 (10th Cir. 2006).

As indicated, the Application Notes to USSG §2G1.3 specifically provide that there is a rebuttable presumption that undue influence was used if the defendant is at least ten years older than the minor. In this case, Castellon was twenty-six years older than Aleah, a sufficient age gap such that Castellon could be the age of her father. Everyone agrees that this rebuttable presumption shifts the burden of producing evidence to rebut the presumption to Castellon. However, "[e]ven if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court." United States v. Stricklin, 932 F.2d 1353, 1355 (10th Cir. 1991). And, as indicated, the government bears the ultimate burden of proving that the sentencing enhancement is warranted.

When Castellon objected to the PSR's recommendation that the two-level "undue influence" enhancement be applied, the probation officer responded as follows:

---

[5]USSG §2A3.2, governing criminal sexual abuse of a minor, was the first place in the Guidelines where an "undue influence" enhancement was included. When the Sentencing Commission promulgated the Guideline provision applicable to Castellon, USSG §2G1.3, it provided for an identical "undue influence" enhancement.

> Upon review of the presentence report, it is this officer's opinion that the two-level increase, pursuant to USSG §2G1.3(b)(2)(B), was appropriately applied. According to USSG §2G1.3 Application Note 3(B), although the Court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior, there shall be a rebuttable presumption that a participant who is more than ten years older than the minor unduly influenced the minor to engage in prohibited sexual conduct. In such a case, some degree of undue influence can be presumed because of the substantial difference in age between the participant and the minor. It should be noted that during the commission of the instant offense, the defendant was 41 years old, while the victim was 15 years old, which is a 26-year age difference. This officer concedes that there is evidence the victim had a practice of initiating contact with males she did not know through the Internet and text messaging, and she used this technique to initiate contact with the defendant, which suggests she was a willing participant in the conduct underlying the instant offense. However, this officer contends that the victim's behavior and the fact that she was one year younger than the age required to give legal consent do not negate the presumption that her voluntariness was compromised by the undue influence caused by the "substantial" difference in age between her and the defendant. As a result, the two-level increase, pursuant to USSG § 2G1.3(b)(2)(B) will not be omitted from the presentence report.

First Addendum to PSR at 1. The district court adopted the PSR and stated at sentencing that it agreed with its analysis in the Addendum. The court also commented, in response to Castellon's statement that he "panicked" when he took Aleah to Mexico, as follows: "Wait a minute. You're picking this girl up at 2:00 in the morning, two or three times, taking her to a motel, and you're telling me you panicked and went down to Mexico with her? I mean, do you think this is my first day sitting up here?" Sealed Tr. of Sentencing Hr'g at 19, R. Vol. III. The court also noted that Castellon "transported a minor from Albuquerque, New

Mexico, to El Paso, Texas, and then Ciudad Juarez, Mexico, and had sexual intercourse with that minor." Id. at 20.

What is clear from the PSR, which contained all the facts about the relationship between Castellon and Aleah and which the court examined and adopted, and from the court's statements at sentencing, is that the court considered all the facts in the case. It found the presumption of undue influence stemming from the substantial (twenty-six year) age difference was not completely rebutted by Castellon's emphasis on Aleah's aggressive sexual behavior both in the past and in this case and his emphasis on the fact that he did not initiate the first contact in this case and did not behave as a typical sexual predator. However, the court's comments also indicate that it did not simply rely on the presumption created by the age difference in order to find that the sentencing enhancement was proper. The court was also influenced by the fact that Castellon picked Aleah up in the middle of the night for sexual liaisons at hotels he paid for, and that he then drove her all the way from Albuquerque to Mexico for further such liaisons, all while she had no money and no identification.[6] Furthermore, it is clear that both Castellon and Aleah were aware

---

[6]As government counsel argued at sentencing:

[E]very single mile this defendant drove from the city of Albuquerque down to Mexico, he had occasion to think about where he was going to, who he was with. He didn't have to go to Mexico. He could have said, "I'm taking you home. You get out of the car.

(continued...)

-11-

that her parents were angry and upset and wanted her to return home. The court's emphasis on the *substantial* age difference between Castellon and Aleah indicates that the court was not simply applying an automatic presumption that undue influence was established because Castellon was more than ten years older than Aleah; rather, it found the government had met its ultimate burden of establishing undue influence because the particular facts of this case, including the fact that Castellon was *twenty-six years older* than Aleah, supported that conclusion.[7] We accordingly hold that the court did not err in applying the two-level undue influence enhancement.

---

[6](...continued)
We're going to sit in the car until you get out, and that's the end of it."
    He didn't have to drive to Mexico. The evidence will support him getting very comfortable with a new life down in Mexico. Because he was seeking employment. He had employment down there. He was beginning to develop that life. He was very comfortable with that.

Sealed Tr. of Sentencing Hr'g at 16-17.

[7]The parties discuss whether the court's consideration of the existence or not of undue influence must focus on the defendant's conduct or on the victim's conduct and/or whose perspective is paramount. The case law is sparse on this issue and not in agreement and involves situations where there is not a live victim, but rather a law enforcement agent acting as a minor victim. See United States v. Chriswell, 401 F.3d 459 (6th Cir. 2005); United States v. Mitchell, 353 F.3d 552 (7th Cir. 2003); United States v. Root, 296 F.3d 1222 (11th Cir. 2002). We find we need not resolve that issue here. As the Guidelines state, the court must examine all the facts in the case, which includes obviously the defendant's conduct and the victim's conduct, including her response to the defendant's conduct. It makes little sense to apply such a "totality of the circumstances" analysis with a narrow focus on either the defendant or the victim.

## II. Reasonableness of Sentence

Castellon argues that, even if the court did not err in imposing the undue influence enhancement, the seventy-one month sentence in this case is unreasonable. As indicated, since Booker, we review the length of sentences for reasonableness, United States v. Torres-Duenas, 461 F.3d 1178, 1183 (10th Cir. 2006), and a properly calculated advisory Guideline sentence is presumptively reasonable. We have further stated that:

> Reasonableness review is guided by the factors set forth in 18 U.S.C. § 3553(a), which include the nature of the offense and characteristics of the defendant, as well as the need for the sentence to reflect the seriousness of the crime, to provide adequate deterrence, to protect the public, and to provide the defendant with needed training or treatment.

Kristl, 437 F.3d at 1053 (internal citation omitted). Further "our post-Booker precedents do not require the court to explain on the record how the § 3553(a) factors justify the sentence," nor do we require "'a ritualistic incantation to establish consideration of a legal issue'" nor the recitation of "'any magic words to show us that [the court] fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider.'" United States v. Lopez-Flores, 444 F.3d 1218, 1222 (10th Cir. 2006) (quoting United States v. Kelley, 359 F.3d 1302, 1305 (10th Cir. 2004)).

-13-

At the sentencing hearing and in his written request for a downward variance,[8] Castellon argued that his conduct and history, and Aleah's conduct and history, took him outside of the heartland of travel sexual offenses, such that a sentence of no more than forty-six months was reasonable. He argued that he was not at risk of being a recidivist, nor was he a danger to the community. The main focus of Castellon's argument, however, was on the first point—that his conduct and history and Aleah's conduct and history made him a very atypical offender and her a very atypical victim. These are largely the same arguments he made in support of his argument that the undue influence enhancement was inappropriate, which we have held do not rebut the presumption of undue influence the Guidelines have created.

The court listened to Castellon's arguments, and then stated that it had "reviewed the presentence report factual findings and . . . considered the sentence guideline applications and the factors set forth in 18 [U.S.C.] [§ ] 3553(a)(1) through (7)" and then sentenced Castellon to seventy-one months. Sealed Tr. of

---

[8]We recently held that:

[W]hen a court reaches a sentence above or below the recommended Guidelines range through application of Chapters Four or Five of the Sentencing Guidelines, the resulting increase or decrease is referred to as a "departure." When a court enhances or detracts from the recommended range through application of § 3553(a) factors, however, the increase or decrease is called a "variance."

United States v. Atencio, No. 05-2279, 2007 WL 102977, at *6 n.1 (10th Cir. Jan. 17, 2007).

Sentencing Hr'g at 20-21. That sentence is presumptively reasonable, and Castellon has not rebutted that presumption. Even were the presumption removed, we cannot say that the sentence imposed is unreasonable, in light of the Guidelines advisory range and the § 3553(a) factors. Further, in the interest of judicial economy, in light of the fact that the district court sentenced Castellon at the high end of the advisory Guideline range, we are confident that it would not impose a lower sentence if we remanded this case. It already had the discretion and opportunity to sentence Castellon to a lesser period of time and it chose not to, evidently believing the case did not warrant it. We accordingly conclude the seventy-one month sentence is reasonable.

### III. Fifth and Sixth Amendment Rights

Finally, Castellon argues that the district court violated his Fifth and Sixth Amendment rights to due process and a jury trial by applying the undue influence presumption in a mandatory way. Because we have already concluded that the district court did not apply the presumption in a mandatory, conclusory way, but rather merely considered it as a part of the entire factual scenario presented in this case, we need not address this argument further.

## CONCLUSION

For the foregoing reasons, the sentence imposed is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge