**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 15, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

　　Plaintiff - Appellee,

v.

DEMARCO LATREL PATTERSON,

　　Defendant - Appellant.

No. 21-7053
(D.C. No. 6:20-CR-00071-RAW-1)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **CARSON**, and **ROSSMAN**, Circuit Judges.
_____

Demarco Patterson entered a conditional plea to sexual abuse of a minor in Indian country. He appeals on two grounds.

First, he contends the district court erred in denying his motion to suppress evidence derived from a search warrant and his arrest. He argues the state judge who issued the warrant and the sheriff's deputy who executed it and arrested him lacked jurisdiction to do so, and that the district court erred in applying the good-faith exception to the exclusionary rule to deny the motion.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Second, he argues the district court erred in imposing a sentencing enhancement under United States Sentencing Guideline ("U.S.S.G.") § 2A3.2(b)(2)(ii) for unduly influencing the minor victim of his offense to engage in prohibited sexual conduct.

Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## I.  BACKGROUND

### 1.  Investigation and Arrest of Mr. Patterson

On June 22, 2019, Matt Youngblood, a deputy with the McIntosh County Sheriff's Office, was dispatched to a home in Checotah, Oklahoma to investigate a report of sexual assault.  There, a 14-year-old told him that earlier that day, she used a friend's phone to communicate with Mr. Patterson, who promised to give her a cell phone.  When they met, he drove her to a secluded road and had sex with her.

After taking the minor's statement, Deputy Youngblood accompanied her to the Muscogee (Creek) Nation Department of Health for a sexual assault nurse examination ("SANE").  The resulting SANE report recorded the results of the examination.  It also contained details elicited from the juvenile, including a written statement from her about the encounter with Mr. Patterson.  The report noted that multiple swabs were taken from the juvenile.

On June 27, 2019, based on the information he obtained through his investigation, Deputy Youngblood prepared an affidavit in support of a search warrant to collect DNA from Mr. Patterson.  In the affidavit, Deputy Youngblood said "that collecting DNA from the person of Demarco Patterson . . . will aid in

2

verifying the information [the juvenile] provided to law enforcement about the sexual assault." ROA, Vol. I at 207. Also on June 27, a state court judge issued a search warrant to take "[b]uccal swabs from the person of Demarco L. Patterson." *Id.* at 208.

On July 1, 2019, Mr. Patterson, who was 23 years old, consented to meet with Deputy Youngblood at the Checotah Police Department. Deputy Youngblood read him his *Miranda* rights, and Mr. Patterson agreed to speak. Although Mr. Patterson at first denied the sexual encounter, he eventually admitted to engaging in sexual acts with the 14-year-old and corroborated her account. Deputy Youngblood next asked Mr. Patterson to prepare a written statement, provided him a form, and left the room. Mr. Patterson wrote the statement, admitting again to engaging in sexual acts with the victim. A copy of his statement is included below:

NAME: Demarco Cotrel Patterson (LAST, FIRST, MIDDLE)    RACE: W BI A HISP NON SEX (M) F
DOB Redacted 1995 AGE: 23 HGT: 6'1 WGT: 165 HAIR: brown EYE: haz
ADDRESS: Redacted
BUS. ADDRESS:
EMAIL ADDRESS:
HOME PHONE: Redacted 28 WORK: CELL:
MARITAL STATUS: M S D W DL#: SS#:
I met her at pizza hut I never even should ot let her hang out we go riding on dirt roads cun she touches me an she asked me if I had Cigarest I said had a black then I asked if she wanted to give me head she said yes she took of her pants cause she wanted me to do the same thing an I did but if didn't an she could of denied on everything told me no an I wouldn't never of said anything or applyed anything

3

Where the form included a designation for race, Mr. Patterson circled "B," indicating he is Black. *See* ROA, Vol. I at 205. Although Mr. Patterson is a member of the Muscogee (Creek) Tribe, he did not circle "I" on the form to indicate that he is a member of an Indian tribe.

While Mr. Patterson prepared his written statement, Deputy Youngblood contacted his supervisor, who advised that Mr. Patterson's oral statements provided sufficient probable cause for arrest. Deputy Youngblood then informed Mr. Patterson that he had a search warrant for DNA evidence and collected buccal swabs from him. After collecting DNA, Deputy Youngblood placed Mr. Patterson under arrest and transported him to jail, where jail personnel collected the clothes Mr. Patterson had worn to the police department.

## 2. Procedural History

The State of Oklahoma charged Mr. Patterson with rape in the second degree. Before Mr. Patterson's trial date, the United States Supreme Court decided *McGirt v. Oklahoma*, 140 S. Ct. 2452 (2020), holding that Congress had not disestablished the Muscogee (Creek) Reservation. *Id.* at 2459. In light of *McGirt*, the Court affirmed our decision in *Murphy v. Royal*, 875 F.3d 896 (10th Cir. 2017), *aff'd*, 140 S. Ct. 2412 (2020), which held the same. Based on *McGirt*, the State dismissed the case against Mr. Patterson because he is a member of the Muscogee (Creek) Tribe, the

alleged crime was committed in Indian country, and thus the federal government, not the State, had jurisdiction.[1]

A federal grand jury then indicted Mr. Patterson for sexual abuse of a minor in Indian country in violation of 18 U.S.C. §§ 1151, 1153, 2243(a), and 2246(2)(A).[2] He moved to suppress the evidence collected by Deputy Youngblood and the jail personnel, arguing that the search and arrest violated his Fourth Amendment rights because the alleged offense occurred in Indian country and thus was beyond the State's jurisdiction.

A federal magistrate judge recommended that the district court deny in part and grant in part the motion to suppress. She concluded (1) both the search and arrest had violated the Fourth Amendment, (2) the DNA evidence was nonetheless admissible because Deputy Youngblood had acted in good faith in executing the search warrant,[3] and (3) the good-faith exception did not apply to warrantless arrests.

---

[1] The record showed and the district court found that Deputy Youngblood had not been cross-deputized to exercise law enforcement authority on the Muscogee (Creek) Reservation.

[2] The Major Crimes Act provides that "[a]ny Indian who commits" certain enumerated offenses within "Indian country" "shall be subject to the same law and penalties as all other persons committing any of [those] offenses, within the exclusive jurisdiction of the United States." 18 U.S.C. § 1153(a). "Indian country" includes "all land within the limits of any Indian reservation under the jurisdiction of the United States Government." Id. § 1151. One of the Act's offenses is "assault against an individual who has not attained the age of 16 years." Id. § 1153(a).

[3] There is no evidence in the record about the results of any DNA analysis.

The magistrate judge thus recommended suppression of the clothing collected incident to arrest but not the DNA evidence collected pursuant to the search warrant.

On review of the magistrate judge's Findings and Recommendations, the district court agreed that the search warrant and arrest violated the Fourth Amendment, but denied the motion to suppress in its entirety.  It determined that the good-faith exception applied to the evidence from both the search warrant and the arrest.

Mr. Patterson pled guilty as charged to sexual abuse of a minor in Indian country.  As a condition of his plea, he preserved the right to challenge the court's denial of his motion to suppress.  *See* Fed. R. Crim. P. 11(a)(2).  At sentencing, the court applied a four-level enhancement under U.S.S.G. § 2A3.2(b)(2)(ii), finding that Mr. Patterson exercised undue influence over a minor to engage in prohibited sexual conduct.  It sentenced Mr. Patterson to 38 months in prison to be followed by five years of supervised release.

## II. **MOTION TO SUPPRESS**

On appeal, Mr. Patterson asserts that the district court erred in its application of the good-faith exception to the exclusionary rule and refusal to suppress evidence from the search warrant and arrest.

### A. *Search Warrant Evidence*

We affirm the district court's application of the good-faith exception to the DNA evidence collected pursuant to the search warrant.

1. **Standard of Review**

"In reviewing the denial of a motion to suppress, we accept the district court's factual findings unless clearly erroneous." *United States v. Hammond*, 890 F.3d 901, 905 (10th Cir. 2018). In conducting our review, we "view the evidence in the light most favorable to the determination of the district court." *United States v. Johnson*, 43 F.4th 1100, 1107 (10th Cir. 2022) (quotations omitted). We review de novo whether the district court correctly applied the good faith exception. *United States v. Workman*, 863 F.3d 1313, 1317 (10th Cir. 2017).

2. **Legal Background**

a. *The exclusionary rule and deterrence*

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV.[4] "[E]vidence obtained in violation of the Fourth Amendment is generally inadmissible" under the exclusionary rule. *United States v. Wagner*, 951 F.3d 1232, 1243 (10th Cir. 2020) (quotations omitted). "The exclusionary rule operates as a judicially created remedy designed to safeguard against future violations of Fourth Amendment rights through the rule's general deterrent effect." *Arizona v. Evans*, 514 U.S. 1, 10 (1995); *see United States v. Calandra*, 414 U.S. 338, 348 (1974).

---

[4] Through its incorporation in the Fourteenth Amendment, the Fourth Amendment applies to searches and seizures conducted by state officers. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

A major purpose of the exclusionary rule is thus to deter unreasonable searches and seizures. *See Terry v. Ohio*, 392 U.S. 1, 12 (1968) (the rule's "major thrust is a deterrent one"); *Elkins v. United States*, 364 U.S. 206, 217 (1960) (the rule's "purpose is to deter"). The Supreme Court has said it is applicable only "where its deterrence benefits outweigh its 'substantial social costs.'" *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 363 (1998). In *Herring v. United States*, 555 U.S. 135 (2009), the Court declared: "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* at 144. The rule "serves to deter deliberate, reckless, or grossly negligent conduct, or . . . recurring or systemic negligence." *Id.*

b. *The good-faith exception*

The Supreme Court first recognized the good-faith exception to the exclusionary rule in *United States v. Leon*, 468 U.S. 897 (1984). *Leon* held that evidence should not be excluded "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *Id.* at 920.[5] "The rationale behind the exception is that when an officer acts in

---

[5] *Leon* identified five instances in which the good-faith exception to the exclusionary rule cannot apply:

1. the magistrate judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;"
2. the "magistrate [judge] wholly abandoned his judicial role;"
3. the "warrant [was] based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;"

8

good-faith reliance on a search warrant, the deterrence rationale of the exclusionary rule is no longer applicable." *United States v. Pacheco*, 884 F.3d 1031, 1045 (10th Cir. 2018).

Whether the good-faith exception applies in a particular case turns on whether "a reasonably well trained officer would have known that the search was illegal in light of all the circumstances," *Herring*, 555 U.S. at 145 (quoting *Leon*, 468 U.S. at 922 n.23)—in the case of a defective warrant, whether the officer "would have known the warrant was invalid despite the . . . judge's authorization," *Workman*, 863 F.3d at 1320. "These circumstances frequently include a particular officer's knowledge and experience . . . ." *Herring*, 555 U.S. at 145.

"When an officer searches pursuant to a warrant, *Leon* generally requires we presume the officer acted in good-faith reliance upon the warrant." *United States v. Campbell*, 603 F.3d 1218, 1225 (10th Cir. 2010). Reliance upon a warrant issued by a neutral magistrate thus creates a "presumption . . . [that] the officer is acting in good faith." *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985) (citing *Leon*, 468 U.S. at 925-26).

---

4. the "warrant [was] so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers c[ould not] reasonably presume it to be valid;" or
5. the officer obtained the warrant based on a "bare bones affidavit and then rel[ied] on colleagues . . . ignorant of the circumstances under which the warrant was obtained to conduct the search."

*Id*. at 923 & n.24 (quotations omitted). None of these instances occurred here.

The good-faith presumption is not absolute. *See United States v. Danhauer*, 229 F.3d 1002, 1007 (10th Cir. 2000) (noting exceptions to the presumption). An "officer's reliance on the defective warrant still must be objectively reasonable." *United States v. Russian*, 848 F.3d 1239, 1246 (10th Cir. 2017). But it is "only when an officer's reliance on [a] warrant is *wholly unwarranted* that good faith is absent, and the evidence acquired should be suppressed." *Pacheco*, 884 F.3d at 1045 (quotations omitted); *see also United States v. Master*, 614 F.3d 236, 239 (6th Cir. 2010). Thus, evidence is admissible when the police "act with an objectively reasonable good-faith belief that their conduct is lawful or when their conduct involves only simple, isolated negligence." *Workman*, 863 F.3d at 1317 (quotations omitted); *accord Pacheco*, 884 F.3d at 1046; *see also Wagner*, 951 F.3d at 1244.

c. *Search warrants issued without jurisdiction*

Courts have applied the good-faith exception in a variety of circumstances, including when a judge lacked jurisdiction to approve a search warrant. In *Workman*, a federal magistrate judge in the Eastern District of Virginia issued a search warrant that authorized the FBI to install software on a server located in the district. 863 F.3d at 1315-16. The software enabled investigators to identify users from throughout the country who accessed the server to view child pornography. *Id.* One of the identified users was Mr. Workman in Colorado, who consequently faced federal child pornography charges. *Id.* at 1316. We held the evidence derived through the software was admissible under the good-faith exception. *Id.* at 1317.

We assumed without deciding that the warrant exceeded the magistrate judge's jurisdiction because it authorized the search of computers located outside the Eastern District of Virginia. *Id*. at 1321.[6] But we determined the executing agents relied on the warrant in good faith. *Id*. at 1320-21. They knew the software would be installed on servers in the jurisdiction where both the magistrate judge was located and any identifying information would be retrieved. *Id*. at 1320. Because we did "not expect [the agents] to understand [the] legal nuances" of a magistrate judge's jurisdiction, we concluded they reasonably relied on the warrant's authorization to install the software. *Id*. at 1321. We applied the good-faith exception to allow use of evidence from this warrant again in *United States v. Cookson*, 922 F.3d 1079, 1090 (10th Cir. 2019), and in *Wagner*, 951 F.3d at 1244-46.

3. **Analysis**

The district court denied Mr. Patterson's motion to suppress DNA evidence because Deputy Youngblood had relied in good faith on the warrant to collect it. We affirm this application of the good-faith exception.

---

[6] Subject to limited exceptions, magistrate judges may issue warrants to seize evidence located only in their districts. *See* 28 U.S.C. § 636(a)(1) (granting magistrate judges authority "within the district in which sessions are held by the court that appointed the magistrate judge"); Fed. R. Crim. P. 41(b) (authorizing magistrate judges "to issue a warrant to search for and seize a person or property located within [their] district" and outlining exceptions).

a. *The good-faith exception may apply to this case*

As in *Workman*, *Cookson*, and *Wagner*, we hold the good-faith exception may

apply. In those cases, we assumed a federal magistrate judge lacked jurisdiction to issue

the search warrant. Here, under *McGirt*, the search warrant exceeded the state judge's

jurisdiction—it authorized Deputy Youngblood, a state law enforcement officer, to

collect a DNA sample from Mr. Patterson, a tribal member, for investigation of a crime

that occurred in Indian country.

Although a state judge rather than a federal magistrate judge issued the search

warrant here, we see no reason the good-faith exception should not apply in both

instances where the issuing judge lacked jurisdiction. *Leon* established that the

good-faith exception applied to invalid state-issued warrants used in federal prosecutions.

468 U.S. at 903. And the Sixth Circuit has held that the good-faith exception applies to

evidence collected pursuant to a warrant that the state judge lacked jurisdiction to issue.

*United States v. Master*, 614 F.3d 236, 243 (6th Cir. 2010), *accord United States v.*

*Moorehead*, 912 F.3d 963, 969 (6th Cir. 2019).[7]

---

[7] In *Master*, a state court judge issued a search warrant for a property located in a neighboring county where he lacked jurisdiction. *Id.* at 238. Officers executing the warrant discovered contraband. The defendant later moved to suppress that evidence from use in his federal prosecution. *Id.* The Sixth Circuit held the good-faith exception could apply when the state judge issued a warrant beyond his jurisdiction. It remanded to the district court to evaluate whether officers had relied on the faulty warrant in good faith. *Id.* at 243.

12

b. *The district court properly applied the good-faith exception*

Under *Leon*, we must presume that Deputy Youngblood "acted in good-faith reliance upon the warrant" when he collected the DNA evidence. *Campbell*, 603 F.3d at 1225. The record provides no basis to conclude otherwise. Nothing in the record suggests that the warrant was "facially deficient" such that Deputy Youngblood could not presume its validity. *Leon*, 468 U.S. at 923. As far as he was concerned, he obtained an objectively valid warrant from a state court judge and executed it in good faith.

Mr. Patterson's contention that Deputy Youngblood knew or should have known the warrant was defective because *Murphy* had been decided two years earlier is unpersuasive. When Deputy Youngblood obtained and executed the warrant, "Oklahoma's long historical prosecutorial practice" was for state law enforcement to investigate crimes on the land where the offense here occurred and to prosecute them in state court. *McGirt*, 140 S.Ct. at 2470. And Oklahoma courts, including the district court in this case, did not regard *Murphy* as binding because the Tenth Circuit's mandate in that case had not issued.[8] At most, this shows that a reasonably well-trained officer in Deputy Youngblood's position might have been confused

---

[8] *See, e.g.*, *McGirt v. Oklahoma*, Case No. PC-2018-1057 (Okla. Crim. App., Feb. 25, 2019) (unpublished) ("*Murphy* is not a final decision and Petitioner has cited no other authority that refutes the jurisdictional provisions of the Oklahoma Constitution."), *see also Bosse v. State*, 499 P.3d 771, 774 (Okla. Crim. App. 2021), *cert. denied*, 142 S. Ct. 1136 (2022) ("[N]o final decision of an Oklahoma or federal appellate court had recognized any of the Five Tribes' historic reservations as Indian Country prior to *McGirt* in 2020.").

13

about state authority over Mr. Patterson and his offense, but it hardly evinces bad faith.

And the record shows that a reasonable officer in Deputy Youngblood's position would not have been confused. At the suppression hearing, he testified that his training and supervisors instructed him that sheriff's deputies "had jurisdiction within McIntosh County." ROA, Vol. 1 at 136. At the training academy in 2019, he first heard about *Murphy* "[v]ery briefly," was told it "was about jurisdictional issues," and was not told it "impacted [his] jurisdiction in any way." *Id.* at 137. When asked at the suppression hearing whether he could "have chosen not to investigate the allegations against Mr. Patterson that he committed the crime on non-Indian land," Deputy Youngblood said, "No, I had a legal obligation," and that he "would have been reprimanded" had he refused to investigate. *Id.* at 151. He reasonably understood that he "was investigating a state crime at that time" *id.* at 170, and that "the crime didn't occur on Indian restricted land," *id.* at 173.

We do not ordinarily expect police officers to act contrary to their training and supervisors,[9] nor to second-guess the legal conclusions of judges. *See Workman*, 863 F.3d at 1321. Any error with the search warrant came from the state judge who

---

[9] At the suppression hearing, Deputy Youngblood's supervisor testified that he did not think that McIntosh County was Indian country following *Murphy* and that if a sheriff's deputy had refused to investigate a crime occurring on non-Indian territory "he would have been reprimanded and possibly sent over to the district attorney for failure to protect, failure to act." ROA, Vol. I at 122-23.

14

issued it,[10] not Deputy Youngblood, who reasonably relied on the state court to issue

a valid warrant. *See United States v. Herrera*, 444 F.3d 1238, 1249 (10th Cir. 2006)

(explaining that suppression is not appropriate when the officer relies in good-faith on a

third party's mistake).[11]

Deputy Youngblood's actions in applying for the warrant further demonstrate

that he acted in objective good faith. He submitted an affidavit that recounted the

victim's statement, and the state judge found probable cause and issued the warrant.

When Deputy Youngblood applied for the search warrant, nothing in the record

shows that he knew Mr. Patterson was a member of the Muscogee (Creek) Tribe.[12]

---

[10] The Supreme Court has said the exclusionary rule is designed "to deter police misconduct," *Illinois v. Krull*, 480 U.S. 340, 348 (1987) (quoting *Leon*, 468 U.S. at 916), and there is "no sound reason to apply the exclusionary rule as a means of deterring misconduct on the part of judicial officers who are responsible for issuing warrants," *Arizona v. Evans*, 514 U.S. at 11. In *Davis v. United States*, 564 U.S. 229 (2011), the Court applied the good-faith exception to officers conducting a search in reliance on "binding appellate precedent." *Id.* at 241.

[11] The district court rejected that this court's *Murphy* decision in 2017 had any bearing on whether Deputy Youngblood acted with a good-faith belief that Mr. Patterson's conduct occurred under state jurisdiction. It reasoned that because the mandate in *Murphy* had been stayed pending Supreme Court review, the decision was not binding precedent until 2020 when the Court decided *McGirt* and affirmed *Murphy*. We reserve to another day the issue of whether the district court's view of the binding effect of a decision of this court when the mandate has not issued is correct. We need not resolve that question to reach the good-faith issue in this case.

[12] Deputy Youngblood's lack of knowledge distinguishes this case from *United States v. Baker*, 894 F.2d 1144 (10th Cir. 1990). There, we found that a state officer executing a state-issued warrant on the property of a tribal member in Indian country did not act in good faith because the search affidavit revealed that the officer knew the "two crucial facts undermining the state court's authority to issue the warrant" and sought it anyway. *Id.* at 1148-49.

When executing the warrant, he had reason to believe Mr. Patterson was not a tribal member because Mr. Patterson had not mentioned his tribal membership during the interview and did not designate his race as Indian on the form for his written statement.

Finally, application of the good-faith exception here comports with the deterrence purpose of the exclusionary rule. That is, the evidence should not be excluded because there was no misconduct to deter. *See Herring*, 555 U.S. at 141. Deputy Youngblood did not act with knowing or reckless disregard of the search warrant's jurisdictional invalidity. Excluding the evidence thus would not satisfy the primary purpose of the exclusionary rule, *see id*. at 144, which applies only when it "result[s] in appreciable deterrence," *Leon*, 468 U.S. at 909 (quoting *United States v. Janis*, 428 U.S. 433, 454 (1976)).

Deputy Youngblood relied in good faith on the search warrant that authorized him to collect Mr. Patterson's DNA evidence. Even assuming the state judge lacked jurisdiction to issue the search warrant, the evidence collected was admissible under the good-faith exception to the exclusionary rule. The district court did not err in denying suppression of the search warrant evidence.

### B. *Incident to Arrest Evidence*

Mr. Patterson also appeals the district court's denial of his request to suppress the evidence collected following his arrest. His challenge fails because he has waived the issue of whether the good-faith exception may apply as a legal matter to a

warrantless arrest,[13] and as with the search warrant evidence, he has not shown the district court erred in holding the arrest evidence was collected in objective good faith.

1. **Waiver of Legal Issue**

In his brief, Mr. Patterson mostly fails to separate his arrest evidence arguments from his search warrant evidence arguments. When he specifically addresses the arrest, he does not argue, as the magistrate judge recommended,[14] that the good-faith exception does not apply to evidence collected from an arrest without a warrant. Instead, he (1) briefly discusses the circumstances surrounding the arrest, Aplt. Br. at 20-21; (2) quotes from the magistrate judge's Findings and Recommendations, *id*. at 10-11, 22; (3) notes the district court's agreement with the magistrate judge that the arrest violated the Fourth Amendment, *id.* at 22-23; and (4) then argues, again conflating the arrest and the search warrant evidence, that "the

---

[13] Mr. Patterson's arrest was both without a warrant and without jurisdiction. *See Ross v. Neff*, 905 F.2d 1349, 1354 (10th Cir. 1990) (holding that "[a] warrantless arrest executed" in Indian country "outside of the arresting officer's jurisdiction is analogous to a warrantless arrest without probable cause"). This more complete description does not alter the waiver analysis presented here, so we use the shorthand "warrantless arrest."

[14] The magistrate judge declined to consider whether the evidence collected incident to Mr. Patterson's arrest qualified for the good-faith exception to the exclusionary rule, stating that "no exception has been recognized for good faith to rescue the warrantless arrest." ROA, Vol. I at 106. The district court disagreed.

salient facts in the instant case" did not justify application of the good-faith exception to deny the motion to suppress, *id.* at 23-24.[15]

In short, Mr. Patterson fails to address in his opening brief (he did not file a reply brief) whether the good-faith exception may apply to a warrantless arrest.[16]  He has waived the issue.  As we stated in *United States v. Fisher*, 805 F.3d 982, 991 (10th Cir. 2015):

> While the "omission of an issue in an opening brief generally forfeits appellate consideration of that issue," *Kitchen v. Herbert*, 755 F.3d 1193, 1208 (10th Cir. 2014) (quotation omitted), it is equally true that an "issue mentioned in a brief on appeal, but not addressed, is waived," *Utah Envtl. Cong. v. Bosworth*, 439 F.3d 1184, 1194 n. 2 (10th Cir. 2006); *see also Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) ("[I]ssues designated for review are lost if they are not actually argued in the party's brief." (quotations omitted)).

*See SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1226 (10th Cir. 2009) ("An issue or argument insufficiently raised in a party's opening brief is deemed waived."); *Silverton*

---

[15] In his "Summary of the Argument," Mr. Patterson does not argue the good-faith exception does not apply to a warrantless arrest as a matter of law. Instead, he says, "The issue in the case is whether, a county deputy's illegal arrest outside his jurisdiction is entitled to a good-faith exception *under all of the factual circumstances of this case*." Aplt. Br. at 6 (emphasis added).

[16] Although we rely on appellate waiver, we also note that Mr. Patterson did not pursue this argument in district court.  It was absent from his (1) motion to suppress evidence, ROA, Vol. 1 at 15-26; (2) reply to the Government's response to his motion to suppress, *id.* at 65-73; (3) statements at the motion to suppress hearing, *id.* at 112-79; (4) objections to the magistrate judge's Findings and Recommendations, *id.* at 213-47; and (5) response to the Government's objections to the magistrate's Findings and Recommendations, *id.* at 262-72.

18

*Snowmobile Club v. U.S. Forest Serv.*, 433 F.3d 772, 783 (10th Cir. 2006) ("[W]e have held that the failure to raise an issue in an opening brief waives that issue." (brackets and quotations omitted)).

Although we have the discretion to reach an issue that has been waived, *see United States v. McGehee*, 672 F.3d 860, 873 n.5 (10th Cir. 2012) ("[W]e are not obliged to apply forfeiture principles to [a party's] briefing omission; such decisions are discretionary."), we decline to do so here. *See also United States v. Rodebaugh*, 798 F.3d 1281, 1314 (10th Cir. 2015). Whether the good-faith exception should apply to evidence collected from a warrantless arrest is a significant Fourth Amendment issue that this circuit has not squarely addressed. But neither the magistrate judge nor the district court offered more than limited analysis of this issue, and we lack the benefit of adequate briefing on it from the parties. Under these circumstances, we leave this issue for a more appropriately preserved and presented case.

2. **Evidence Collected with Objective Good Faith**[17]

Without deciding, due to Mr. Patterson's waiver, whether the good-faith exception may apply to evidence collected incident to a warrantless arrest, we consider Mr. Patterson's argument that the exception should not be recognized in this instance because Deputy Youngblood acted in "deliberate disregard" of the Fourth Amendment.[18] Aplt.

---

[17] Judge Rossman, having determined that the preceding discussion of waiver in II.B.1. resolves the arrest warrant evidence issue, does not join this section, II.B.2.

[18] Mr. Patterson's argument that the evidence should be excluded because Deputy Youngblood did not act in good faith implies that the good-faith exception is

Br. at 18.  We disagree.  Applying the standard of review stated above for the search warrant evidence, we hold the district court did not err in deciding that the arrest was conducted and the evidence was collected in objective good faith.  Deputy Youngblood reasonably believed he had probable cause to make the arrest based on the oral and written statements from both the victim and Mr. Patterson.  A reasonable officer in Deputy Youngblood's position, based on his training and instructions from supervisors, his supervisor's approval of the arrest, and his reasonable belief that he had jurisdiction to perform the arrest, would have had an objective good-faith basis to arrest Mr. Patterson.

We therefore affirm the district court's decision to deny suppression of the evidence collected incident to the arrest.

### III.  SENTENCING ENHANCEMENT

Mr. Patterson also challenges the district court's application of a four-level undue influence enhancement at sentencing.  We conclude that the district court did not err.

---

applicable to warrantless arrests, further indicating that he waived any argument that the exception categorically may not apply.

A. *Additional Background*

1. **Legal Background**

a. *Standard of review*

When a defendant makes a procedural challenge to a sentencing enhancement, we review factual findings for clear error and purely legal questions de novo. *See United States v. McDonald*, 43 F.4th 1090, 1095 (10th Cir. 2022).

b. *Section 2A3.2(a)*

Sentencing Guideline § 2A3.2(a) sets a base offense level of 18 for criminal sexual abuse of a minor under the age of 16 years (statutory rape) or attempt to commit such acts. The sentencing court may impose a four-level enhancement if "a participant unduly influenced the minor to engage in prohibited sexual conduct." U.S.S.G. § 2A3.2(b)(2)(ii).

An Application Note to § 2A3.2 states that in determining whether the undue influence enhancement applies, "the court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior." U.S.S.G. § 2A3.2 cmt. 3(B). It further provides that when "a participant is at least 10 years older than the minor, there shall be a rebuttable presumption" that the undue influence enhancement applies. *Id.*

The enhancement covers cases where "coercion, enticement, or other forms of undue influence by the defendant . . . compromised the voluntariness of the victim's behavior and, accordingly, increased the defendant's culpability for the crime." U.S.S.G. § 2A3.2 cmt. background (2000); *see also United States v. Castellon*,

21

213 F. App'x 732, 736 (10th Cir. 2007) (unpublished) (cited as instructive under Fed. R. App. P. 32.1; 10th Cir. R. 32.1(A)).

At sentencing, "[t]he government has the burden of proving by a preponderance of the evidence any findings necessary to support a sentence enhancement." *United States v. Gambino-Zavala*, 539 F.3d 1221, 1228 (10th Cir. 2008).

## 2. **Procedural Background**

The PSR recommended a four-level sentencing enhancement under U.S.S.G. § 2A3.2(b)(2) and said that "some degree of undue influence can be presumed because of the substantial difference in age between the participant and the minor." Aplt. Br. at 25 (quoting the PSR). At sentencing, the district court adopted the PSR's recommendation. It explained that the enhancement applied based on the following facts:

(1) Mr. Patterson was approximately nine years and six months older than the victim,

(2) he offered her a free cell phone if she met him,

(3) he drove her to a secluded dirt road and directed her to perform sexual acts,

(4) the victim had no means to call for help or remove herself, and

(5) the victim told officers that she complied with the directives because she was not sure what Mr. Patterson would do if she refused.

## B. *Analysis*

The district court did not err by applying the undue influence enhancement.

At sentencing, the district court considered the victim's and Mr. Patterson's ages, his attempts to gain her trust after she told him she was 14, his promise to buy her a cell phone, and that Mr. Patterson drove her to a secluded location where they engaged in sexual acts.

The court's conclusion that Mr. Patterson unduly influenced the victim comports with factors courts consider in applying the undue influence enhancement. *See Castellon*, 213 F. App'x at 736 (considering that defendant picked up the victim late at night, drove her to Mexico without identification, and knew that her parents wanted her to return home in determining undue influence); *see also United States v. Montijo-Maysonet*, 974 F.3d 34, 52 (1st Cir. 2020) (finding "ample" proof of undue influence when defendant offered victim "something to smoke or drink," brought her to a secluded motel, and gained her trust even when victim originally planned the encounter).

The district court did not, as Mr. Patterson contends, rely on the age difference between the victim and Mr. Patterson to presume undue influence. To the contrary, the probation office and the court both noted that the presumption did not apply. In response to Mr. Patterson's objections to the PSR, the probation officer clarified that the rebuttable presumption did not apply because Mr. Patterson was not 10 years older than the victim. *See* Aplt. Br. at 26. And at sentencing, the district court did not rely on a presumption. Instead, it properly considered the age difference as one of many factors in concluding that Mr. Patterson had exerted undue influence over the victim. *See Castellon*, 213 F. App'x at 738 n.7 (courts must apply a "totality of

23

the circumstances analysis" to establish undue influence); *see also United States v. Carter*, 960 F.3d 1007, 1011 (8th Cir. 2020) (considering a nine-year age gap as a factor in undue influence evaluation).

Mr. Patterson argues the district court failed to consider evidence from the SANE about the victim's prior sexual history. Aplt. Br. at 28-29. But the court acted within its discretion to discount this information as irrelevant. As the Government notes, *see* Aplee. Br. at 32, this evidence would have been excluded at trial. *See* Fed. R. Evid. 412(a) (prohibiting "evidence offered to prove that a victim engaged in other sexual behavior" or "to prove a victim's sexual predisposition" in a "civil or criminal proceeding involving alleged sexual misconduct").

Mr. Patterson also argues the district court failed to consider that the victim asked to meet him in person. According to the victim's handwritten statement, she suggested where to meet after Mr. Patterson asked her if she wanted a free cell phone and called her pretty. But the undue influence enhancement "nominally applies to consensual sexual acts with a person who has not attained the age of 16 years," and recognizes that the victim may have been unduly influenced or coerced by defendant under those circumstances. U.S.S.G. § 2A3.2 cmt. background (2000).

We conclude that the district court did not err in applying the enhancement and thus affirm Mr. Patterson's sentence.

IV. **CONCLUSION**

We affirm the district court's denial of Mr. Patterson's motion to suppress and its application of the undue influence sentencing enhancement. We affirm the district court's judgment.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge